## Michael Mizenko

v.

## Electric Motor and Contracting Company, Inc., et al.

Record No. 910687

June 5, 1992

Present: All the Justices

*Ralph Rabinowitz (Rabinowitz, Rafal, Swartz, Taliaferro & Gilbert*, on briefs), for appellant.

*Carter B. S. Furr (Jett, Berkley, Furr & Padgett*, on brief), for appellee Electric Motor and Contracting Company, Inc.

*F. Nash Bilisoly (Thomas J. Duff; Vandeventer, Black, Meredith & Martin*, on brief), for appellee Metro Machine Corporation.

JUSTICE KEENAN delivered the opinion of the Court.

The primary issue in this appeal is whether a worker who was injured while performing ship repair is barred by the exclusivity provision of the Virginia Workers' Compensation Act, Code § 65.1-1 *et seq.* (now Code § 65.2-100 *et seq.*) (Virginia Act), from asserting a negligence action under the general maritime law against a prime contractor, as well as a subcontractor who was not his employer. We conclude that, under the facts presented in this case, the Virginia exclusivity provision cannot be applied to bar Mizenko's federal maritime action against Electric Motor and Contracting Company (Electric). However, based on *Metro Machine Corp. v. Mizenko*, 244 Va. 78, 419 S.E.2d 632 (1992), decided today, Mizenko's federal maritime action against Metro Machine Corporation (Metro) is barred under federal law and, therefore, the Virginia exclusivity provision may be given effect to bar Mizenko's claim against Metro.

Michael Mizenko was employed by Abacus Temporary Services (Abacus) as a pipe fitter. Abacus is in the business of furnishing

skilled labor to area employers. Abacus contracted with Metro, a Norfolk shipyard, to furnish Metro skilled labor.

Pursuant to this contract, Abacus sent Mizenko to work for Metro. Mizenko was assigned to work in the engine room of the U.S.S. COMPTE DE GRASSE, a naval destroyer being repaired by Metro pursuant to a contract with the United States Navy. The U.S.S. COMPTE DE GRASSE was a completed vessel afloat in navigable waters of the United States and docked at Metro's shipyard.

Metro subcontracted with Electric to refurbish and clean the generators on the U.S.S. COMPTE DE GRASSE. In the course of performing the subcontract, Electric employees used a toxic solvent to clean the generators. Mizenko alleges that he suffered injuries as a result of inhaling fumes from this solvent. He received workers' compensation for these injuries, through Abacus, under the Longshoremen and Harbor Workers' Compensation Act, 33 U.S.C. § 901 *et seq.* (Longshore Act).

Mizenko subsequently filed a motion for judgment against Metro and Electric alleging negligence "under the Maritime Law." Metro filed a motion for summary judgment in support of its special plea to the bar of workers' compensation, alleging that Mizenko was a borrowed servant under the Longshore Act and that it was Mizenko's statutory employer under the Virginia Act.[1] Thus, Metro argued that Mizenko's claim was barred under both the Longshore Act and the Virginia Act. In an order entered January 26, 1990, the trial court denied Metro's motion for summary judgment but did not state its reason for the denial.

By special pleas, a motion for summary judgment and a motion to dismiss, Metro and Electric next argued that the Virginia Act barred recovery by Mizenko, based on the decision of this Court in *McBride* v. *Metric Constructors*, 239 Va. 138, 387 S.E.2d 780 (1990). The trial court sustained the motions and dismissed the case with prejudice. In sustaining both motions, the trial court held that, based on *McBride*, Mizenko's claim was barred by the Virginia Act even

---

[1] Under former Code § 65.1-41 (now Code § 65.2-309), Mizenko may only bring a negligence action against an "other party." Neither Metro nor Electric qualify as "other parties" within the meaning of Code § 65.1-41 because Metro is Mizenko's employer and Electric is engaged in a part of the trade, business, or occupation of Metro. *Smith* v. *Horn*, 232 Va. 302, 306, 351 S.E.2d 14, 16 (1986). Thus, application of the Virginia Act would bar Mizenko's action against both Metro and Electric.

though he received compensation under the Longshore Act. Accordingly, the trial court held that Mizenko was "barred from bringing a tort action for negligence against those whom the [Virginia Act] declares immune." This appeal followed.

## I.

Mizenko argues that his claim is one of maritime tort, cognizable within the exclusive jurisdiction of admiralty and that, as such, it constitutes a federal maritime cause of action. Mizenko argues that, because he was injured on navigable waters while engaged in ship repair, an employment directly affecting navigation and commerce, the injury and employment are maritime in nature and, thus, come within the jurisdiction of admiralty.

Metro responds that Mizenko's claim does not come under admiralty jurisdiction because his injury has no significant relationship to a traditional maritime activity. Metro contends that the circumstances surrounding Mizenko's injury possess few characteristics which are uniquely maritime and that the injury just as easily could have occurred on land. According to Metro, Mizenko's action arises out of common law negligence and is therefore subject to the Virginia Act's exclusivity provision. We find Metro's argument unpersuasive.

To support a cause of action for a maritime tort which falls within admiralty jurisdiction, the alleged negligence must occur on the navigable waters of the United States and the wrong must bear a significant relationship to traditional maritime activity. *East River Steamship Corp.* v. *Transamerica Delaval Inc.*, 476 U.S. 858, 863-64 (1986). Here, the parties agree that the activity took place on navigable waters, but disagree as to whether the activity bore a substantial relationship to traditional maritime activity.

In *Sisson* v. *Ruby*, 497 U.S. 358, 110 S.Ct. 2892 (1990), the United States Supreme Court held that, in order to determine whether an activity has a significant relationship to a traditional maritime activity, the relevant activity is not defined by the particular circumstances of the incident. Rather, it is defined by the general conduct from which the incident arose. 497 U.S. at 364, 110 S.Ct. at 2897. In the case before us, the record reflects that Metro's contract with the Navy was to conduct ship repairs on the U.S.S. COMPTE DE GRASSE, a vessel lying in navigable waters. Mizenko was injured while performing these repairs. The Supreme Court has uniformly

held that ship repair is a maritime activity. *Baizley Iron Works* v. *Span*, 281 U.S. 222, 232 (1930); *Messel* v. *Foundation Co.*, 274 U.S. 427, 432 (1927); *Robins Dry Dock & Repair Co.* v. *Dahl*, 266 U.S. 449, 457 (1925); *Great Lakes Dredge & Dock Co.* v. *Kierejewski*, 261 U.S. 479, 480-81 (1923). Thus, we hold that the activity with which we are presented here has a significant relationship to traditional maritime activity and that Mizenko has asserted a cause of action in maritime tort.

## II.

■ Since Mizenko has asserted an action in maritime tort within the jurisdiction of admiralty, the trial court was required to apply general maritime law. *Pope & Talbot, Inc.* v. *Hawn*, 346 U.S. 406, 409 (1953). The general maritime law is drawn from both federal and state sources and is "an amalgam of traditional common-law rules, modifications of those rules, and newly created rules." *East River Steamship*, 476 U.S. at 865. Within admiralty jurisdiction, the general maritime law applies unless preempted by federal legislation. *East River Steamship*, 476 U.S. at 864; *Knickerbocker Ice Co.* v. *Stewart*, 253 U.S. 149, 160-61 (1920); *Chelentis* v. *Luckenbach Steamship Co.*, 247 U.S. 372, 381 (1918); *Southern Pacific Co.* v. *Jensen*, 244 U.S. 205, 215 (1917).

■ Under the general maritime law, a state law which changes, modifies, or affects maritime law may be given effect unless

> it contravenes the essential purpose expressed by an act of Congress, or works material prejudice to the characteristic features of the general maritime law or interferes with the proper harmony and uniformity of that law in its international and interstate relations.

*Chelentis*, 247 U.S. at 381 (citation omitted). Accordingly, the first step in determining whether state law may be applied is to determine whether application of the state law would conflict with rights afforded under the general maritime law. Where there is an admiralty - state law conflict, courts have examined and weighed the respective interests behind each law to determine whether federal law should supplant the application of state law. *See Askew* v. *American Waterways Operators, Inc.*, 411 U.S. 325, 338-39 (1973); *Baizley*, 281 U.S. at 223; *Grant Smith-Porter Ship Co.* v. *Rohde*, 257 U.S.

469, 477 (1922); *Western Fuel Co.* v. *Garcia*, 257 U.S. 233, 242 (1921); *Knickerbocker Ice*, 253 U.S. at 160-61; *Chelentis*, 247 U.S. at 381-82. In discussing the relationship between state and federal law within admiralty and maritime jurisdiction, the Supreme Court has held that a state may supplement federal maritime policy, but it may ''not deprive a person of any substantial admiralty rights as defined in controlling acts of Congress or by interpretative decisions of this Court.'' *Pope & Talbot*, 346 U.S. at 409-410.

## III.

Having determined that this action should be governed by the general maritime law, we must now decide whether to give effect to the state exclusivity provision. Mizenko argues that his right to sue for a maritime tort under the general maritime law may not be barred by the state exclusivity provision. Specifically, he contends that application of the Virginia Act would preclude him from bringing this negligence action and, thus, a right available to him under the general maritime law would be denied.

In order to determine whether the Virginia Act's exclusivity provision should be given effect in this case, we must first determine whether the application of state law would conflict with the application of the general maritime law. If there is no conflict, the state law may be applied. If a conflict exists, we must evaluate the comparative state and federal interests involved. *See Askew*, 411 U.S. at 338-39; *Baizley*, 281 U.S. at 223; *Rohde*, 257 U.S. at 477; *Western Fuel*, 257 U.S. at 242; *Knickerbocker Ice*, 253 U.S. at 160-61; *Chelentis*, 247 U.S. at 381-82. In making this evaluation, we employ the *Chelentis* analysis as explained in *Steelmet, Inc.* v. *Caribe Towing Corp.*, 779 F.2d 1485, 1488 (11th Cir. 1986). There, the court held that:

> One must identify the state law involved and determine whether there is an admiralty principle with which the state law conflicts, and if there is no such admiralty principle . . . . [and no admiralty principle should] be fashioned, the state rule should be followed. . . . If there is an admiralty - state law conflict, the comparative interests must be considered — they may be such that admiralty shall prevail . . . or if the policy underlying the admiralty rule is not strong and the effect on admiralty is minimal, the state law may be given effect.

 Based on our decision in *Metro Machine Corp.* v. *Mizenko*, 244 Va. 78, 419 S.E.2d 632 (1992), decided today, we find that there is no admiralty - state law conflict in Mizenko's action against Metro.[2] Since no conflict exists, we find that the state exclusivity provision may be given effect to bar Mizenko's claim against Metro.

Unlike Metro, Electric does not contend that Mizenko's action is barred by the Longshore Act or any other federal authority. Further, in the trial court, Electric's special plea asserted only that Mizenko's action is barred by the Virginia Act. Thus, for purposes of this inquiry, Electric has conceded that the Longshore Act would not bar Mizenko's action under the general maritime law.

 If we put aside Electric's procedural concession, we still conclude that the Longshore Act does not bar Mizenko's suit against Electric. Initially, we recognize the basic principle that under the Longshore Act, an employee may not bring a negligence action against a "person in the same employ" because the Longshore Act extends absolute immunity from suit to fellow employees of an injured worker. 33 U.S.C. § 933(i); *Nations* v. *Morris*, 483 F.2d 577, 587 (5th Cir. 1973), *cert. denied*, 414 U.S. 1071 (1973); *Bailey* v. *Collier*, 465 So.2d 381, 382 (Ala. 1985); *Smalls* v. *Blackmon*, 269 S.C. 614, 616, 239 S.E.2d 640, 641 (1977). However, the Longshore Act permits an injured employee to bring a negligence action against a third party. 33 U.S.C. § 933(a); *Pallas Shipping Agency, Ltd.* v. *Duris*, 461 U.S. 529, 533 (1983); *Czaplicki* v. *Hoegh Silvercloud*, 351 U.S. 525, 532-33 (1956).

The parties have not cited, nor have we found, any cases interpreting the Longshore Act which address whether a subcontractor is a "person in the same employ" with an individual employee of the prime contractor.[3] However, several states which have an exclusivity provision similar to that of the Longshore Act, and which have confronted this issue, have held that a subcontractor is not in the same employ with an employee of the prime contractor. *Frohlick*

---

[2] In *Metro Machine Corp.* v. *Mizenko*, 244 Va. 78, 419 S.E.2d 632, this Court held that Mizenko was a borrowed servant of Metro under the general maritime law. Accordingly, Mizenko's exclusive remedy is workers' compensation and Metro is immune from any claim of negligence made by Mizenko. *See id.*

[3] The few cases which address the meaning of "persons in the same employ" under the Longshore Act do not address whether subcontractors are "persons in the same employ" with employees of the prime contractor. *See Traywick* v. *Juhola*, 922 F.2d 786 (11th Cir. 1991); *Calder* v. *Crall*, 726 F.2d 598 (9th Cir. 1984), *cert. denied*, 469 U.S. 857 (1984).

*Crane Serv., Inc.* v. *Mack,* 182 Colo. 34, 37-38, 510 P.2d 891, 893 (1973); *Parkhill Truck Co.* v. *Wilson,* 190 Okl. 473, 480, 125 P.2d 203, 210 (1942); *Benoit* v. *Hunt Tool Co.,* 219 La. 380, 401-02, 53 So.2d 137, 144 (1951); *Boettner* v. *Twin City Constr. Co.,* 214 N.W.2d 635, 640 (N.D. 1974).

We find that this interpretation comports with the conceptual framework of the Longshore Act and, therefore, we reach the same result in our analysis of its provisions. Unlike the Virginia Act, the Longshore Act has not been interpreted by the courts as providing a ''canopy'' of immunity to all subcontractors engaged in the work, trade, or business of the prime contractor. *See* 2A Larson, *The Law of Workmen's Compensation* § 72.32-33 (1990). Further, under the Longshore Act, the reason for treating subcontractors in the posture of Electric as third parties is that they have no potential liability for payment of workers' compensation benefits to an injured employee of the prime contractor. Accordingly, under this analysis, there is no quid pro quo providing a rationale for holding Electric immune from liability for its negligence. *See id.*

Based on our determination that Mizenko's action would be barred by the Virginia Act, and that it would not be barred by the Longshore Act, we are faced with a conflict in the substantive rights afforded to Mizenko under the general maritime law and under state law. Therefore, we next evaluate whether the federal interests involved here outweigh the state interests in order to determine whether to give effect to the Virginia Act's exclusivity provision.

In *Pope & Talbot, Inc.* v. *Hawn,* 346 U.S. 406 (1953), the Supreme Court was confronted with a similar negligence claim arising out of a worker's performance of ship repairs while the ship was berthed at a pier located on the Delaware River in Pennsylvania. In holding that federal maritime law, and not Pennsylvania law, governed the action, the Court emphasized that, since the worker was injured on navigable waters while working on the repair of a ship, his right of recovery was rooted in federal maritime law. 346 U.S. at 409. Therefore, the Court determined that Pennsylvania law could not be applied to bar his action under federal law. To hold otherwise, the Court explained, would result in the deprivation of a substantive admiralty right. 346 U.S. at 409-10. Like the worker in

---

Rather, these cases hold only that an injured employee of a non-appropriated fund instrumentality, located on a federal military base, is a ''person in the same employ'' with military personnel because the parties were both federal employees under the jurisdiction of a branch of the military. *Calder,* 726 F.2d at 601; *Traywick,* 922 F.2d at 788.

*Pope & Talbot*, Mizenko has a substantive admiralty right against Electric arising from the general maritime law. We view this as a compelling federal aspect in our review process.

██ The need for uniformity in application of the general maritime law is also a substantial consideration here. If some workers who are engaged in distinctly maritime activity are deprived of their right to bring a federal cause of action in certain state courts, while other maritime workers have the right to maintain exactly the same cause of action in other state courts, the result would be a denial of substantive federal rights based on the mere happenstance of location. We believe that this is precisely the kind of disparity that the general maritime law was developed to avoid.

The wholly maritime nature of Mizenko's employment is another factor which we must consider. As stated in *Flowers* v. *Travelers Ins. Co.*, 258 F.2d 220 (5th Cir. 1958), *cert. denied*, 359 U.S. 920 (1959), "the repair of an existing vessel is one of the most ancient of maritime transactions." 258 F.2d at 221. In holding that the welding activity involved was maritime in nature, the court in *Flowers* rejected an argument that the activity was not maritime simply because it could have been performed equally on land or at sea. *Id.* We reject the similar argument put forth by Electric and we hold, as did the court in *Flowers*, that whether the worker's activity could also be performed on land is "completely irrelevant" to our determination that the work of ship repair is distinctly maritime in nature. *Id.*

██ We also reject Electric's assertion that the case before us is one of "maritime but local" concern and, thus, that the Virginia Act may be applied to bar Mizenko's claim. Electric relies on a line of United States Supreme Court decisions which recognize that some injuries fall under maritime jurisdiction but are local in character. *See Rohde*, 257 U.S. at 476. Within this "maritime but local" area, workers may receive compensation benefits under either federal or state compensation statutes. *Calbeck* v. *Travelers Ins. Co.*, 370 U.S. 114, 124-25 (1962). None of these cases, however, addresses under what circumstances a state exclusivity provision can bar a federal cause of action in maritime tort.

Electric also relies substantially on this Court's decision in *American Foods* v. *Ford*, 221 Va. 557, 272 S.E.2d 187 (1980). In *Ford*, a welder was killed in the course of repairing a ship moored at his employer's dock. His widow received compensation under the Virginia Act. Relying on *Calbeck*, this Court held that both federal and

state governments are constitutionally competent to provide workers' compensation benefits to workmen killed or injured on navigable waters in Virginia. 221 Va. at 561, 272 S.E.2d at 190.

As we recognized in *Ford*, there is a zone of concurrent jurisdiction in "maritime but local" cases in which state or federal workers' compensation benefits may be sought. However, neither *Ford*, nor *Sun-Ship, Inc.* v. *Pennsylvania*, 447 U.S. 715 (1980), also cited by Electric, establishes a zone of concurrent jurisdiction for any type of claim other than workers' compensation.[4] Further, unlike *Ford*, the issue before us is not whether *workers' compensation benefits* may be sought under the state or federal scheme. Instead, we are presented with the question whether the exclusivity provision of the Virginia Act may bar an injured worker from asserting a *federal cause of action* in *maritime tort*.

Electric contends that because Mizenko sustained a work-related injury, his maritime tort action is controlled by *Ford*. We disagree. As stated above, *Ford* addressed only a jurisdictional question regarding the filing for workers' compensation benefits. It did not address the applicability of the Virginia Act's exclusivity provision or whether an injured worker can maintain an action in federal maritime tort.

We also find that, unlike the cases relied upon by Electric, there are no overriding state law components which would make the case before us one where state interests in the application of its law outweighs federal interests. In *Grant Smith-Porter Ship Co.* v. *Rohde*, 257 U.S. 469 (1922), where the Supreme Court allowed the exclusivity provision of the Oregon workers' compensation statute to be given effect, the Court emphasized the fact that construction work on an uncompleted vessel was not an activity having any direct relation to navigation and commerce. 257 U.S. at 476. In reaching its decision, the Court also relied heavily on the fact that, according to the provisions in the worker's employment contract, he had agreed to be bound by the terms of the Oregon statute. *Id.* In contrast, we observe that these significant factors of state concern are not present in the case before us.

---

[4] Additionally, "maritime but local" was developed as a remedial concept to ensure that no worker is denied compensation due to a situs dispute. Thus, the purpose of the "maritime but local" concept is not to exclude remedies, but to enhance them. *Sun-Ship*, 447 U.S. at 723-24. Accordingly, Electric's reliance on *Sun Ship* and other similar cases is misplaced, since these cases seek to provide, rather than deny, a remedy to the injured worker.

In the cases of *Brockington* v. *Certified Electric, Inc.*, 903 F.2d 1523 (11th Cir. 1990), *cert. denied*, 111 S.Ct. 676 (1991), and *P. J. Carlin Constr. Co.* v. *Heaney*, 299 U.S. 41 (1936), also relied on by Electric, there was another significant state interest not present in the case before us. In both *Brockington* and *Heaney*, the work involved totally land-based construction. The workers in both of these cases were injured on ferry boats which were transporting them to their job sites on nearby islands. Thus, the nexus to maritime activity in these cases was very slight since the actual work performed by these employees was completely non-maritime in nature.

The case before us presents a distinct contrast. We find that there is a strong nexus to maritime activity here, as well as serious concerns regarding uniformity in the application of the general maritime law. Further, we hold that the state interest in this case is minimal. Since Mizenko is receiving workers' compensation benefits under the Longshore Act, rather than the Virginia Act, we are not confronted with a situation where a worker is attempting to repudiate one portion of the Virginia Act, while he is accepting benefits under another portion of the Act. Thus, the balance struck by the Virginia Act, in providing compensation to workers, in return for which immunity is afforded to defined employers, is not implicated in this case.

Based on these considerations, we hold that there is no state interest present in this case which outweighs the need for uniformity in the application of the general maritime law. To take away Mizenko's federal right of action, merely because his ship was located in navigable waters in a Virginia port, would undermine basic principles of federal uniformity with no measurable benefit resulting to the state. Thus, under the principles set forth in *Chelentis*, we conclude that we cannot give effect here to the Virginia Act's exclusivity provision in Mizenko's action against Electric, since it would work "material prejudice to the characteristic features of the general maritime law," and it would interfere with "the proper harmony and uniformity of that law." 247 U.S. at 381.

Additionally, we find that our decision in *McBride* v. *Metric Constructors*, 239 Va. 138, 387 S.E.2d 780 (1990), is consistent with this result. In *McBride*, a worker, who was injured on land in an area subject to the concurrent jurisdiction of the Virginia and Longshore Acts, received compensation under the Longshore Act. At the time of his injury, McBride was working on the construction

of a tunnel in a shipyard. He brought a *common law negligence* action to recover damages for his injuries. Under the Virginia Act, the defendants were immune from liability. We held that the exclusivity provisions of the Virginia Act operated to bar McBride's action for common law negligence. 239 Va. at 140-41, 387 S.E.2d at 781-82.

Unlike the case before us, the activity giving rise to McBride's injury was not one that is traditionally related to maritime activity. Rather, it was land-based work which involved the painting of a mechanical tunnel. Thus, McBride did not have a cause of action for negligence under the general maritime law and the circumstances surrounding his injury were not distinguishable from those in any other common law negligence claim. For this reason, the compelling considerations of federal uniformity and substantive rights under the general maritime law, which are present here before us, were not factors in *McBride*.[5]

Accordingly, we will affirm the trial court's dismissal of Mizenko's action against Metro in accordance with this Court's opinion in *Metro Machine* and, with respect to Mizenko's claim against Electric, we will reverse the judgment of the trial court and remand this cause for further proceedings consistent with the principles stated herein.

*Affirmed in part,*
*reversed in part,*
*and remanded.*

JUSTICE LACY, with whom CHIEF JUSTICE CARRICO and JUSTICE COMPTON join, dissenting.

The trial court dismissed Michael Mizenko's motion for judgment against Electric Motor and Contracting Company, Inc. and Metro Machine Corporation based on its interpretation and application of two cases recently decided by this Court: *McBride* v. *Metric Constructors*, 239 Va. 138, 387 S.E.2d 780 (1990), and *American Foods* v. *Ford*, 221 Va. 557, 272 S.E.2d 187 (1980). Like the trial court, I

---

[5] Also, unlike McBride, Mizenko did not assert that the Longshore Act created a federal cause of action. As we have stated, Mizenko's cause of action arises out of the general maritime law. The general maritime law is separate and distinct from the Longshore Act. Thus, our recognition in *McBride*, that the Longshore Act did not create a federal cause of action in negligence against a general contractor and an owner, has no impact on a claim such as Mizenko's.

find no factual or legal circumstances of jurisprudential significance which take the instant case out of the purview of *McBride* and *Ford*. The majority's attempt to draw such distinctions is unpersuasive and is based on circumstances which do not exist in fact or in law, leaving the status of these cases and the state of the law in this area murky at best. If the *McBride* and *Ford* precedents are applied to the instant case the judgment of the trial court must be affirmed.

My disagreement with the majority also extends to the majority's failure to follow the very analytical framework it espouses. As a result of this departure, the majority uses an improper standard of review to reach its conclusion. The majority enunciates two premises to guide its review:

(1) When a cause of action in maritime tort is asserted, general maritime law applies unless preempted by federal statutes; and

(2) Under general maritime law, a state law which ''changes, modifies, or affects'' maritime law may, nevertheless, be applied if it does not contravene essential purposes expressed by a congressional act, materially prejudice the characteristic features of general maritime law, or interfere with its uniformity.

In applying the first premise, however, the majority does not consider whether any federal statute has preempted the general maritime law applicable in this case. Rather, the majority proceeds to compare the provisions and policies of the Virginia Workers' Compensation Act (VWCA or the Virginia Act),[1] Code §§ 65.2-100, *et seq.*, with principles of general maritime law. Finding a conflict, the majority determines that the general maritime law, allowing Mizenko to proceed in his negligence action against Electric Motor, must prevail.

If, however, federal statutory law which preempts the general maritime law in the area of work-related injuries to longshoremen is properly considered, the analysis and result are different. In my opinion, such preemptive legislation does exist and should be applied in this case. The Longshore and Harbor Workers' Compensation Act (LHWCA or the Federal Act), 33 U.S.C. §§ 901, *et seq.*, is the federal statute relating to issues involving work-related injuries of longshore and harbor workers and to that extent preempt general maritime law.[2]

---

[1] The VWCA was recodified in 1991 with no substantial changes relevant here. Therefore, references to the Virginia Act will be to the present sections.

[2] Consideration of the LHWCA is a part of the legal analysis applicable to these types of claims. It does not constitute an affirmative defense or other procedural issue and is not a

If the provisions of the Virginia Act and the LHWCA are compared using the proper standard of review, no conflict is found between the policies embodied in both acts. Therefore, giving effect to the Virginia Act in this instance and dismissing Mizenko's negligence action against Electric Motor does not frustrate the federal law.[3]

## I.

### Virginia Precedent

#### *McBride* v. *Metric Constructors*

In *McBride*, this Court held that, in areas where both the VWCA and the LHWCA could be applied to the injury at issue, an employee was precluded from bringing an independent action against an employer who was entitled to immunity under the Virginia Act. The majority determines that the *McBride* rationale is "consistent with" the instant case, but need not be followed because the action filed by McBride was a *common law negligence action*, while Mizenko's motion for judgment is an *action for negligence under the general maritime law*. This distinction in pleading, the majority says, implicates considerations of federal uniformity and substantive rights under general maritime law in the latter, but not in the former.

---

matter to be "conceded." *See Hunter* v. *Virginia International Terminals*, 244 Va. ix, 419 S.E.2d 654 (1992) (this day decided) (Lacy, J., dissenting).

[3] Although Mizenko's action against Metro Machine Corporation was precluded on other grounds, *see Metro Machine Corp.* v. *Mizenko*, 244 Va. 78, 419 S.E.2d 632 (1992) (this day decided), in my opinion, Mizenko's action against Metro would also be precluded under the Virginia statute even if Mizenko was not Metro's borrowed servant. Both the State and Federal Acts require employers to purchase workers' compensation insurance to insure that compensation payments will be made. Va. Code § 65.2-800; 33 U.S.C. §§ 904, 932. Both the Virginia and Federal Acts limit immunity from common law negligence suits to those employers who are required by the statute to purchase workers' compensation insurance. Va. Code §§ 65.2-800, -805; 33 U.S.C. § 905(a), § 904. The VWCA requires contractors and subcontractors to purchase workers' compensation insurance because, under the VWCA, an injured employee may elect to collect compensation from those statutory employers. *See* Va. Code §§ 65.2-302 to -800. Immunity is not granted by gratuitous purchase of workers' compensation insurance under either statute. Enforcement of the Virginia immunity provisions, where only those required to purchase workers' compensation insurance receive the immunity are in accord with the federal policy and do not frustrate the operation of federal law. Accordingly, I would affirm the judgment of the trial court as to Metro Machine on this basis.

The majority position is based solely on a pleading distinction which, in fact, does not exist. McBride alleged that (1) he was a maritime employee engaged in maritime employment, (2) while he was so employed he sustained injuries ''resulting from the negligence'' of the defendants, and (3) he ''was entitled to the benefits of the general maritime law of the United States.'' In 1990, this Court characterized that pleading as a common law negligence action. *McBride*, 239 Va. at 138, 387 S.E.2d at 780.

Mizenko alleged in his pleadings that (1) pursuant to the LHW-CA, he ''has a right to sue any and all other third parties other than his direct employer,'' (2) while employed as a pipefitter aboard a vessel he sustained injuries ''caused by the negligence of'' the defendant, and (3) he was entitled to judgment ''under the Maritime Law.'' Today the majority characterizes this pleading as an action for negligence under the general maritime law. Both pleadings establish the employment-related nature of the injury sustained, allege negligence as the cause of the injury, and invoke the application of general maritime law. There is no factual basis to support the distinction upon which the majority relies.

This Court was correct two years ago when it identified McBride's pleadings as a suit for common law negligence. Reviewing the substance of a motion for judgment, rather than labels attached by the pleader, is consistent with the jurisprudence of this state. ''Alleging in a pleading . . . that a case 'is governed by the General Maritime Law' does not necessarily make a cause of action one 'within federal admiralty jurisdiction.' '' *Brown* v. *Brown*, 226 Va. 320, 324, 309 S.E.2d 586, 588, *cert. denied*, 467 U.S. 1242 (1983). *See also Griffis* v. *Gulf Coast Pre-Stress Co.*, 850 F.2d 1090, 1092 (5th Cir. 1988). In both instances, the allegations were ones of common law negligence, and the trial court was required to and properly did apply *McBride* to this case.

### *American Foods* v. *Ford*

In 1980, this Court found that an employee's injury sustained while welding hydraulic lines aboard a ship anchored in navigable waters at Cape Charles was encompassed within the federally-created doctrine of ''maritime but local.'' *Ford*, 221 Va. at 562, 272 S.E.2d at 190. In accordance with the decision of *Sun Ship, Inc.* v. *Pennsylvania*, 447 U.S. 715 (1980), this Court then held that, when considering injuries designated ''maritime but local,'' federal law

was not the exclusive remedy and did not preempt state law; rather, such injuries were subject to concurrent jurisdiction and were, therefore, compensable under both the VWCA and the LHWCA. *Ford*, 221 Va. at 561, 272 S.E.2d at 190.

There are no facts in this case which, for jurisprudential purposes, would differentiate Mizenko's injury from that suffered by Ford. Mizenko's injury occurred while he was repairing a ship in navigable waters, just as Ford's did. Mizenko, like Ford, was a Virginia resident. Mizenko's employer, Abacus Temporary Service, Inc., a Virginia corporation which provided professional temporary services, sent him to Metro Machine Corporation. Metro in turn assigned Mizenko, a pipefitter, to repair pipe on the U.S.S. COMPTE DE GRASSE. Electric Motor and Contracting Company, also a Virginia company, was performing repairs to gas turbine generators of the ship pursuant to its subcontract with Metro. None of these facts detracts from the virtual identity of circumstances relevant to the injuries of Ford and Mizenko, circumstances which in the former case supported this Court's conclusion that the injury and its concomitant state interest invoked the doctrine of ''maritime but local.'' The reasoning in *Ford*, then, would seem to compel the conclusion that Mizenko's injury was ''maritime but local'' in nature and subject to the concurrent jurisdiction of the VWCA and the LHWCA. Nevertheless, the majority holds today that the injury is not ''maritime but local,'' and avoids reconciling its conclusion with that of *Ford* by determining that neither *Ford* nor *Sun Ship* is controlling.

The majority reads *Ford* and *Sun Ship* as creating a zone of concurrent jurisdiction *only* for workers' compensation claims. Ergo, as Mizenko's claim is not one for workers' compensation, it is not within or subject to the zone of concurrent jurisdiction. However, consideration of the rights and remedies afforded by either or both acts to injuries subject to their jurisdiction is not predicated on, or limited to, claims for workers' compensation benefits. *McBride* did not involve a claim for workers' compensation, yet the injured employee's injury and remedy, therefore, was subject to the concurrent jurisdiction of the LHWCA and the VWCA.

Furthermore, in my opinion, the concept of ''maritime but local'' injuries as discussed in *Ford* is not addressed by the majority. Analysis of this concept is based on the circumstances of the *injury* such as where it happened, the nature of the employment, and the applicability of state and/or federal statutory law; it has little if anything

to do with the type of recovery sought by the injured party. To conclude, as the majority does today, that Mizenko's injury is not ''maritime but local,'' and that his injury or claim is not within the zone of concurrent jurisdiction, is at complete odds with the decision of this Court in *Ford*.

I respectfully cannot subscribe to the majority's novel application of the terms ''concurrent jurisdiction'' and ''maritime but local.'' Those terms, and the legal concepts which they represent, as I understand them, are discussed in the following section.

## II.

### The Standard of Review

The legal history of the availability of compensation for injuries incurred in the course of maritime employment has evolved over many decades. *See generally* 1A Ellen M. Flynn, et al., Benedict on Admiralty chs. I, V (7th ed. 1991); 4 Arthur Larson, The Law of Workmen's Compensation § 89 (1990). It begins with the underlying premises that the federal government is vested with exclusive jurisdiction over admiralty and maritime matters, and that injuries occurring on navigable waters are exclusively within the domain of federal law. Recognizing this, the United States Supreme Court held early on that uniformity and harmony in the development and application of federal maritime and admiralty law precluded application of state workers' compensation coverage to injuries occurring within federal maritime jurisdiction. *Southern Pacific Co.* v. *Jensen*, 244 U.S. 205 (1917). Furthermore, this responsibility was non-delegable, thereby precluding Congress from enacting laws which expanded the jurisdiction of state compensation statutes to cover accidents occurring within federal maritime jurisdiction. *Washington* v. *W.C. Dawson & Co.*, 264 U.S. 219 (1924); *Knickerbocker Ice Co.* v. *Stewart*, 253 U.S. 149 (1920).

Since there was no federal counterpart to the no-fault compensation mechanisms adopted by the various states, longshoremen could recover for their work-related injuries only through common law

negligence suits.[4] Still, under the judicially created doctrine of "maritime but local," longshoremen were able to receive compensation under state workers' compensation acts in some circumstances. This doctrine involved a determination that the injury had local characteristics such that allowing the application of state law did not destroy the uniform application of federal maritime law. *Grant Smith-Porter Ship Co.* v. *Rohde*, 257 U.S. 469 (1922); *Western Fuel Co.* v. *Garcia*, 257 U.S. 233 (1921). At this time, however, the category of "maritime but local" was based on a principle of exclusive jurisdiction, not upon concurrent state-federal jurisdiction, and remained rooted in the goal of preserving the uniformity of maritime law.

In 1927, Congress enacted the LHWCA, which established a no-fault compensation scheme for longshoremen's work-related injuries occurring on navigable waters. The Supreme Court, in upholding the constitutionality of the Federal Act, held that its application was restricted to "matters that fall within the admiralty and maritime jurisdiction" and, as such, was consistent with congressional power to alter the substance of this area of federal jurisdiction. *Crowell* v. *Benson*, 285 U.S. 22, 39-40 (1932). Further, limitation of the Act's application to instances where recovery could not validly be provided by state law indicated that the Act did not invade areas of state control, and retained the exclusive nature of admiralty and maritime jurisdiction.[5] *Id.*

The statutory language, reserving some areas of compensation to the states, effectively memorialized the "maritime but local" doctrine, and perpetuated its exclusive nature. However, this language did not eliminate the problem of determining what constituted "maritime but local." As noted by the Supreme Court:

> No dependable definition of the area—described as "maritime but local," or "of local concern"—where state laws could apply ever emerged from the many cases which dealt with the matter in this and the lower courts. The surest that could be said was that any particular injury might be within the

---

[4] Sailors, on the other hand, could bring a variety of no-fault actions: maintenance and cure; wages; and unseaworthiness. The remedy of unseaworthiness was not established as a cause of action available to longshoremen until 1946, with the United States Supreme Court's opinion in *Seas Shipping Co.* v. *Sieracki*, 328 U.S. 85 (1946). That cause of action was subsequently abolished for longshoremen with the 1972 amendments to the LHWCA.

[5] This qualification was eventually eliminated with the 1972 amendments to the LHWCA.

area of "local concern," depending upon its peculiar facts. In numerous situations state acts were considered inapplicable because they were thought to work material prejudice to the characteristic features of the general maritime law, particularly in cases of employees engaged in repair work. On the other hand, awards under state compensation acts were sustained in situations wherein the effect on uniformity was often difficult to distinguish from those found to be outside the purview of state laws. [Footnotes omitted.]

*Calbeck* v. *Travelers Insurance Co.*, 370 U.S. 114, 119 (1962).

The Federal Act also added new problems associated with defining when injuries were within a zone of state jurisdiction. *Compare United States Casualty Co.* v. *Taylor*, 64 F.2d 521 (4th Cir.), *cert. denied*, 290 U.S. 639 (1933) *with Continental Casualty Co.* v. *Lawson*, 64 F.2d 802 (5th Cir. 1933).

To help resolve this issue, the Supreme Court identified a new area, the "twilight zone," where considerations of the appropriateness of state or federal authority were made on a case-by-case basis. *Davis* v. *Department of Labor*, 317 U.S. 249, 256 (1942). The *Davis* decision, followed by *Calbeck*, represented a major departure from previous concepts of the nature of the federal-state jurisdictional dichotomy. In *Calbeck*, the Supreme Court clearly abandoned the concept of exclusive jurisdiction and adopted one of *concurrent jurisdiction* when considering the remedies available for maritime work-related injuries. 370 U.S. at 128-29. Examining the language of the Federal Act, especially the provisions requiring an offset against federal compensation benefits for compensation benefits received under a state act, the Supreme Court concluded that the Federal Act was not meant to be an election-of-remedy statute. *Id.* at 131-32. Thus, since *Calbeck*, the state and federal compensation laws are considered as operating concurrently. When injuries were considered "maritime but local," a claimant could collect compensation under either the federal or state scheme, or under both.

In 1972, Congress amended the LHWCA and extended its application to injuries sustained on land by certain employees involved in maritime activities. In reviewing the Federal Act's applicability, the Supreme Court examined the federal-state jurisdictional issues involved in these land-side maritime injuries and held that the amendment created an area of concurrent jurisdiction on the land-side, just as the Court in *Calbeck* had previously found concurrent

jurisdiction to exist on the water-side. *Sun Ship*, 447 U.S. at 719-22. The 1972 amendment "supplements, rather than supplants, state compensation law." *Id.* at 720.

Today, there is no question that work-related maritime injuries occurring on land or on navigable waters occur within an area of concurrent jurisdiction, and the remedies for those injuries will be defined by consideration of both federal and state law. The significance of this shift from mutually exclusive to concurrent jurisdiction is especially relevant in this case. Under the earlier mutually exclusive approach, determination that an injury was "maritime but local" required a finding which could justify the entire displacement of federal law in this area. The standard of review now applicable in these areas of concurrent jurisdiction operates

> not to seek out conflicts between federal and state laws "where none clearly exists" or to strike down state laws under the Supremacy Clause where application of the state laws will result in no frustration of federal law.

*Garvin* v. *Alumax of South Carolina, Inc.*, 787 F.2d 910, 918 (4th Cir. 1986), *cert. denied*, 479 U.S. 914 (1987). In the *Garvin* case, the Fourth Circuit found that no conflict existed between the immunity provisions prescribed under the South Carolina law and those contained in the LHWCA, and gave effect to the South Carolina provisions. *See also Lewis* v. *Modular Quarters*, 508 So.2d 975 (La. App. 3rd Cir. 1987), *cert. denied*, 487 U.S. 1226 (1988) (White, J. and Blackmun, J., dissenting); *Crater* v. *Mesa Offshore Co.*, 539 So.2d 88 (La. App. 3rd Cir.), *cert. denied*, 493 U.S. 905 (1989).

## III.

### Comparison of the VWCA and the LHWCA

A review of the Federal and State Acts supports the conclusion that irreconcilable differences do not exist between state and federal policies or interests in this area. Accordingly, it is not necessary to preclude application of the VWCA in this case.

Both the VWCA and the LHWCA were enacted to provide a no-fault recovery mechanism in exchange for making the cost of the compensation a cost of doing business for the industry. Both establish a workers' compensation scheme as the primary source of compensation for work-related injuries. *See, e.g., Griffith* v. *Raven Red*

*Ash Coal Co.*, 179 Va. 790, 20 S.E.2d 530 (1942); 1984 U.S. Code Cong. & Admin. News 2734, 2740. Both allow the bringing of a common law negligence action against a third party under certain circumstances. *Griffith, supra*; Va. Code § 65.2-309; 33 U.S.C. § 903(B).

Most important for this case, both statutes prohibit common law negligence actions against fellow employees. Va. Code § 65.2-307; 33 U.S.C. § 933(i). The Virginia Act's prohibition clearly precludes Mizenko's action against Electric Motor. Congress specifically adopted the same exclusive remedy policy in the LHWCA: that the right to compensation under the LHWCA "shall be the exclusive remedy to an employee when he is injured . . . by the negligence or wrong of any other person or persons in the same employ." 33 U.S.C. § 933(i).

Differences which may arise in determining who are "fellow employees," "others," "strangers to the employment," or "persons in the same employ," as developed on a case-by-case basis in the respective jurisdictions, do not undercut the identity of the policy endorsed by both jurisdictions.[6] Under the standard of review discussed above, therefore, giving effect to a policy providing for an exclusive remedy for work-related injuries caused by fellow employees as interpreted by Virginia law does not frustrate the federal law.

Furthermore, the Virginia law is consistent with the interpretation of the phrase "persons in the same employ" contained in 33 U.S.C. § 933(i). *Calder* v. *Crall*, 726 F.2d 598 (9th Cir.), *cert. denied*, 469 U.S. 857 (1984), involved a lawsuit filed by a cafeteria cashier against a carpenter and a noncommissioned air force officer for injuries sustained when a nail from a fastener gun penetrated a wall and struck the cashier in the leg. The cashier was employed by the Army and Air Force Exchange Service (AAFES). The AAFES is a nonappropriated fund instrumentality which is an enterprise controlled by the federal government, but not supported by federally-appropriated funds. AAFES pays its employees' salaries and benefits with funds generated from its activities. The carpenter was a civilian who was employed on the same air force base, and the officer was assigned to the base on active duty. Under federal law,

---

[6] The determination whether a defendant is in fact "not in the same employ," "a stranger to the business," or otherwise within or without the immunity provisions is fact specific. *Compare Parkhill Truck Co.* v. *Wilson*, 190 Okla. 473, 480, 125 P.2d 203, 210 (1942) *with Alvis* v. *Bill Jackson Rig Co.*, 636 P.2d 910 (Okla. App. 1981).

employees of the AAFES are subject to the LHWCA. However, both the officer and the carpenter were subject to federal workers' compensation acts other than the LHWCA.

The Court in *Calder* determined that the phrase "persons in the same employ" contained in the LHWCA included the carpenter and the officer, although they were not employees of AAFES as was the cashier. The Court noted that AAFES employees are federal employees who may not sue the United States in a personal injury action, but who are limited to remedies under the LHWCA. The Court found that AAFES was "an integral part of the military structure," was providing funds for supplemental welfare and recreational activities for the army and air force, and was ultimately responsible to the Secretaries of the Army and of the Air Force. Consequently, the Court held that the employment of all three persons on the air force base under the jurisdiction of the Department of the Air Force constituted working "in the same employ" under 33 U.S.C. § 933(i). 726 F.2d at 601.

The fact that the officer, the carpenter, and the cashier received paychecks from different entities, were supervised by independent entities, were engaged in different types of activities, were covered by different compensation laws, and were not the direct employees of the same employer, was not determinative. Rather, the Court looked to the identity and nature of the common employer, and the work of the employees in question as it related to that of the common employer. This analysis emulates that used to determine whether an alleged tortfeasor is a "stranger to the business" or an "other party" under Virginia workers' compensation jurisprudence. Therefore, applying Virginia jurisprudence does not frustrate the federal statute and, in my opinion, applying either statute to the instant case precludes Mizenko's action against Electric Motor.[7]

---

[7] In dicta, the majority cites Professor Larson's view that workers' compensation immunity provisions should not be extended to those entities in a common employ or under a common employer, 2A Arthur Larson, The Law of Workmen's Compensation § 72.33 (1990), and concludes that the phrase "persons in the same employ" in the LHWCA should not extend to Electric Motor in this case. However, in contrast to the majority's position, not only did the single federal court construing this phrase in a similar factual context reach the opposite conclusion, *Calder, supra,* a number of states have adopted the broader application of immunity provisions. As recognized by Larson, statutory grants of immunity to fellow employees contained in the statutes of states such as New York, North Carolina, Washington, Oregon, and Ohio support the *Calder*/Virginia "common employment" analysis. Larson, *supra.* States with more restrictive statutory immunity protections allow common law negligence suits against fellow employees as well as against employers and their employees

## IV.

### Comparison of state and federal interests

Assuming for the moment that the proper point of comparison is that followed by the majority, and the state act is compared to general maritime law, I still conclude that the Virginia Act precludes Mizenko's negligence action against Electric Motor.

The two-pronged elements of federal interest the majority cites which are to be weighed against state interests here are characterized as the "substantive admiralty right" to sue Electric Motor for negligence in this instance, and the need to insure that maritime workers may be uniformly allowed to bring a suit like this in all state courts. Accepting, although not agreeing with this definition of the federal interest, I turn to the state interests as I see them and as analyzed by the majority.

The majority's conclusion regarding the relative federal and state interests is reached primarily by distinguishing the cases previously decided by this Court, *McBride*, and *Ford*, discussed above, and three federal cases: *P. J. Carlin Constr. Co.* v. *Heaney*, 299 U.S. 41 (1936), *Grant Smith-Porter Ship Co.* v. *Rohde*, 257 U.S. 469 (1922), and *Brockington* v. *Certified Electric, Inc.*, 903 F.2d 1523 (11th Cir. 1990), *cert. denied*, 498 U.S. 1026, 111 S.Ct. 676 (1991). In *Rohde*, the Court held that general admiralty jurisdiction extended to a work-related injury but that the state law could be applied even though it precluded the "right to recover damages in an admiralty court which otherwise would exist." *Rohde*, 257 U.S. at 478. The

---

other than the direct employer of the injured party. *See, e.g., Nations* v. *Morris*, 483 F.2d 577, 580 (5th Cir.), *cert. denied*, 414 U.S. 1071 (1973); *Benoit* v. *Hunt Tool Co.*, 219 La. 380, 401-02, 53 So.2d 137, 144 (1951). In states such as Utah, Massachusetts, and Florida, the ability to sue "fellow employees" or "others in the same employ or business" is based on specific authorizing language in the workers' compensation statutes although, prior to the legislative action, court interpretations of the statutes precluded such suits. Until Congress determines to amend the LHWCA and allow suits between fellow employees as these states have done, the analysis of the *Calder* Court is consistent with other courts interpreting similar legislation.

Finally, it should be noted that workers' compensation insurance rates are based on the level of risk associated with the trade, business, or occupation in question, thereby spreading the insurance risk of an industry among the industry members. Va. Code § 65.2-821; *see* 1990 S.C.C. Ann. Rep. 94-95. As such, it is a component of the *quid pro quo* rationale for workers' compensation. *Whalen* v. *Dean Steel Erection Co., Inc.*, 229 Va. 164, 170-71, 327 S.E.2d 102, 106 (1985).

majority cites two elements as "significant factors of state concern" in *Rohde*, but not present in the instant case, which precludes the *Rohde* result here. First, the nature of the activity giving rise to the injury, construction work on an uncompleted vessel, did not have a direct relation to navigation and commerce; and second, under the employment contract, the injured worker had agreed to be bound by the terms of the Oregon statute.

Rohde was a carpenter and was enclosing tanks in the substantially completed vessel located in navigable waters. To say that "Rohde's general employment" and his precise activity when injured were not directly related to navigation or commerce, as the Supreme Court did, is saying no more than that a carpenter enclosing tanks on a ship is not doing something directly related to navigation or commerce. Nevertheless, the Court held that the circumstances of this employment were sufficient to invoke admiralty jurisdiction as the Court held. Applying this prong to the instant case, Mizenko's work, repairing pipes on a ship, like building covers for ships' tanks, is in itself not directly related to navigation or commerce, but the activity has been consistently held to constitute maritime employment and invoke admiralty jurisdiction. *See Ford*, 221 Va. at 561-62, 272 S.E.2d at 190.

The second prong, acceptance of the Oregon workers' compensation statute, was not embodied in a written contract, but arose by virtue of payments made to the Industrial Accident Fund. This "contract," non-maritime in nature, was found by the Supreme Court to define the rights between the parties without contemplation of the general system of maritime law. In this regard, the application of the Virginia law is similar. Mizenko presumptively accepted the statute's provisions when he undertook employment with Abacus. Va. Code § 65.2-300. For purposes of the state's interest, the employment "contracts" of Mizenko and Rohde were virtually identical. The fact is that Virginia, like Oregon, has an interest in regulating the rights and interests surrounding employment and the application of those "local law[s] cannot materially affect any rules of the sea whose uniformity is essential." *Rohde*, 257 U.S. at 477. In my opinion, the state interests identified in *Rohde* are no different than Virginia's interests in this case, and the enforcement of those interests, as in *Rohde*, is sufficient to override the stated federal interests.

Similarly, in two other cases in which the state law rather than general maritime law was applied, the majority finds a significant

state interest which it says distinguishes those cases from the instant case and forecloses the result of those cases in the instant case. In *Brockington*, a land-based electrician was injured as a result of a boating collision while being transported by boat to his job site. Brockington brought a negligence action against his employer invoking the admiralty jurisdiction of the federal courts under general maritime law.[8] The employer moved for summary judgment, arguing that the claim was barred by the provisions of the Georgia Workers' Compensation Act.

Recognizing that under certain circumstances state law may appropriately be applied by federal courts sitting in admiralty, the Eleventh Circuit then evaluated the propriety of applying the Georgia law in these circumstances. Using the accepted analysis of balancing the relevant state and federal interests, the Eleventh Circuit found the "interest in applying general maritime law to the present [negligence] action is not substantial." *Brockington*, 903 F.2d at 1532. The Eleventh Circuit reached that conclusion after surveying instances where admiralty law overrode state law such as: (1) when state law precluded a wrongful death action which was specifically permitted under general maritime and admiralty law; and (2) where recovery was based not on negligence, but on a claim of unseaworthiness, a peculiar right recognized by admiralty. When state law supplements or modifies maritime law in a manner not hostile to or inconsistent with federal maritime law or legislation, however, maritime law is not required to displace state law. Citing instances where federal courts have allowed application of state workers' compensation law, the Eleventh Circuit concluded that:

> It can hardly be argued that uniformity considerations would be implicated where there appears to be no uniform rule and, in admiralty cases where a rule of admiralty did not require uniformity, state laws have been accepted as the rules of decision.

*Id.*

Turning to the state interest involved, the Eleventh Circuit found that Georgia's interest in applying state law is relatively high. The factors cited by the court in *Brockington* were in the main the same

---

[8] He also stated a cause of action under the LHWCA. However, the court found that he was not a "maritime employee" as defined by the Act.

factors existing in the instant case. The majority in this case, however, dismisses the Eleventh Circuit's analysis regarding the state interest, stating that *Brockington* involved a "significant state interest not present in the case before us . . . the work involved totally land-based construction." *Mizenko* v. *Electric Motor and Contracting Co.*, 244 Va. 152, 163, 419 S.E.2d 637, 644, (1992). The land-based nature of the work was not even considered by the Eleventh Circuit as a factor in determining that the action was peculiarly local. *Brockington*, 903 F.2d at 1532. Furthermore, to discount this case on the basis of the land-based nature of the work ignores the fact that the electrician's activity had to have a substantial nexus with traditional maritime activity to qualify him for maintaining a federal maritime action under admiralty and maritime jurisdiction. *Id.* at 1529.

I agree with the Eleventh Circuit holding in *Brockington* and I find no overriding federal maritime interest which would be served by denying application of state law on the facts of this case.

Finally, the majority also distinguished *P. J. Carlin*, because it involved a land-based worker who was injured while on a ferry transporting him to his work site. Like the court in *Brockington*, however, the Supreme Court, in allowing the application of state law, did not base its decision in any way on the land-based nature of the employee's work. Consequently, this factor is not a persuasive or legitimate factor to support a different result in this case.

Based on my analysis of the cases set forth by the majority in comparing the federal and state interests, I conclude that Virginia's interest in enforcement of workers' compensation law here is as substantial as the states' interests in *Rohde*, *Brockington*, and *P. J. Carlin*. Consistent with the courts deciding those cases, I find that application of state law to preclude this suit to recover damages for injuries already compensated under workers' compensation does not materially prejudice the characteristic features of general maritime law and, further, does not significantly undermine uniformity of federal maritime law.

## V.

The majority's persistent adherence to its view of this claim — a maritime tort under general maritime law invested with substantive rights unaffected by federal and state work-related injury law — underlies the dichotomy between my position and that of the majority.

This difference is more than an intellectual disagreement. For example, if a longshoreman should seek damages for a work-related injury based on a claim of negligence against his employer and labels his cause of action a maritime tort, not a claim for workers' compensation, I cannot conceive that a court would not apply the provisions of the LHWCA, regardless of the label assigned to the claim, and dismiss the action. Nevertheless, when the majority opinion is applied to this hypothetical situation, neither the LHWCA nor the VWCA may be considered or applied, and the suit must be allowed to proceed in the interests of uniformity under the general maritime law and the preservation of a federal maritime right to bring an action for negligence. I dissent.