Present:  Carrico, C.J., Compton, Lacy, Hassell, Keenan, and
Koontz, JJ., and Whiting, Senior Justice

BRENDA MATTHEWS
                        OPINION BY JUSTICE A. CHRISTIAN COMPTON
v.  Record No. 961140              February 28, 1997

COMMONWEALTH OF VIRGINIA,
DEPARTMENT OF TRANSPORTATION

            FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
                      Randolph T. West, Judge


     This is an action for personal injuries suffered by a

passenger who slipped and fell while aboard a ferryboat sailing

in navigable waters.  The sole question we consider is whether

the trial court erred in ruling that the action is not a maritime

tort to be decided under federal admiralty law.

     Just before dawn on December 2, 1993, plaintiff Brenda

Bullock, now Brenda Matthews, drove her motor vehicle aboard the

state-owned ferryboat Williamsburg while it was docked in the

navigable waters of the James River at Jamestown.  She boarded to

take breakfast to her boyfriend, the ferryboat's captain.

     As the ferryboat neared completion of the 2.2-mile, 17-

minute trip across the James to the dock at Scotland in Surry

County, the plaintiff was injured.  She slipped and fell as she

was walking across the boat's deck returning to her vehicle from

her visit with the captain.

     Subsequently, she filed a motion for judgment against

defendant Commonwealth of Virginia, Department of Transportation,

seeking recovery in damages.  She alleged that she was a paying

passenger aboard the defendant's vessel and that she was injured

as the result of the defendant's employees' negligence in failing

"to keep the deck of the ferry safe for passengers to walk upon." Responding, the defendant denied the allegations of negligence, and asserted the plaintiff was guilty of contributory negligence and assumption of the risk.

At the beginning of a March 1996 jury trial, the plaintiff asked the trial court to rule that the case would be tried "under the rules of comparative rather than contributory negligence under maritime law." The Attorney General, on behalf of the defendant, took the position that "the rules of admiralty do not apply to this case" because it "is a garden variety slip-and-fall case that could have happened as well on land as on sea." After argument of the motion, the court denied it, ruling that the court would "follow the regular tort law," not admiralty law.

The trial progressed. The plaintiff sought to establish that she slipped on residue of a lubricant, which had been tracked across the boat's steel deck. The evidence showed that the substance was used by the crew to lubricate the boat's safety gates installed at each end of the vessel. The defendant presented evidence that its employees were not negligent and that the plaintiff did not know what caused her fall.

Among the issues presented to the jury in the court's instructions were primary and contributory negligence. The jury found in favor of the defendant, and the court entered judgment on the verdict. The plaintiff appeals.

The following assignment of error raises the dispositive

appellate issue: "The trial court erred in applying the doctrine of contributory negligence to an admiralty case."

The standards of maritime law provide that contributory negligence is to be considered only in mitigation of damages in a tort action. Kermarec v. Compagnie Generale Transatlantique, 358 U.S. 625, 629 (1959). Thus, we must decide whether the rights and liabilities arising from the conduct of which the plaintiff complains are within the full reach of admiralty jurisdiction and measurable by the standards of maritime law, or whether the substantive law of the Commonwealth recognizing contributory negligence as a complete bar to recovery controls.

To support a cause of action for a maritime tort that falls within admiralty jurisdiction, a party "must satisfy conditions both of location and of connection with maritime activity." Grubart v. Great Lakes Dredge & Dock Co., 513 U.S. 527, ___, 115 S.Ct. 1043, 1048 (1995). The alleged negligence must occur on navigable water and the wrong must bear a significant relationship to traditional maritime activity. Mizenko v. Electric Motor and Contracting Co., 244 Va. 152, 156, 419 S.E.2d 637, 640 (1992) (citing East River Steamship Corp. v. Transamerica Delaval Inc., 476 U.S. 858, 863–64 (1986)).

In the present case, the Attorney General agrees that defendant's alleged tortious conduct took place on navigable water, that is, the locus requirement has been satisfied. The Attorney General contends, however, that the conduct did not bear

- 3 -

a substantial relationship to traditional maritime activity, that is, the nexus requirement has not been met.

In order to decide whether an activity has a significant relationship to a traditional maritime activity, the court should "determine the potential impact of a given type of incident by examining its general character." Sisson v. Ruby, 497 U.S. 358, 363 (1990). Accord Mizenko, 244 Va. at 156, 419 S.E.2d at 640. The jurisdictional inquiry does not turn on the actual effects on maritime commerce of the particular facts of the incident. "Rather, a court must assess the general features of the type of incident involved to determine whether such an incident is likely to disrupt commercial activity." Sisson, 497 U.S. at 363. The inquiry should be "whether a tortfeasor's activity, commercial or noncommercial, on navigable waters is so closely related to activity traditionally subject to admiralty law that the reasons for applying special admiralty rules would apply in the case at hand." Grubart, 513 U.S. at ___, 115 S.Ct. at 1051. See Price v. Price, 929 F.2d 131, 135-36 (4th Cir. 1991).

Parenthetically, we note that the Attorney General relies on a four-factor nexus test articulated in Kelly v. Smith, 485 F.2d 520, 525 (5th Cir. 1973). The Supreme Court in Sisson expressly declined to adopt the Kelly test, 497 U.S. at 366 n.4, and we do not apply it here.

The general activity that is the basis of the plaintiff's claim involves maintenance of the vessel's deck and of the safety

- 4 -

gates on either end of the ferryboat.  The plaintiff's evidence tended to show that the substance utilized to lubricate the safety gates collected in puddles on the steel deck and that vehicle tires tracked the lubricant across the deck causing the hazard that injured her.

We are of opinion that, "given the broad perspective demanded" by the nexus test, Sisson, 497 U.S. at 367, maintaining a vessel's equipment and its deck under these circumstances is substantially related to traditional maritime activity.  Indeed, Sisson expressly holds that "storage and maintenance of a vessel at a marina on navigable waters" meets the test.  Id. Manifestly, failure to so maintain a vessel properly at the dock or underway is likely to disrupt the commercial activity central to the maritime purpose of a ferryboat, that is, transporting paying passengers safely across navigable water to their destination.

Consequently, we hold that the trial court erred in instructing the jury on contributory negligence and in refusing to allow the case to proceed under the general maritime law of negligence.  Thus, the judgment in favor of the defendant will be reversed and the case will be remanded for further proceedings consistent with this opinion.

Reversed and remanded.