Steven G. MOORE, Plaintiff,

v.

CAPITOL FINISHES, INC., Defendant.

Civil Action No. 2:09cv392.

United States District Court,
E.D. Virginia,
Norfolk Division.

March 9, 2010.

Carlton F. Bennett, Craig Stewart Gill, Jr., Catherine Maclean Six, Bennett & Zydron PC, Stephen C. Swain, Shuttleworth Ruloff Swain Haddad & Morecock PC, Virginia Beach, VA, Stephen Mark Smith, Hampton, VA, for Plaintiff.

Andrew Anthony Protogyrou, Marcus Colston Jones, Nicholas Lee Woodhouse, Protogyrou & Rigney PLC, Norfolk, VA, for Defendant.

### *OPINION AND ORDER*

JEROME B. FRIEDMAN, District Judge.

Currently before the court is defendant Capitol Finishes, Inc.'s motion for summary judgment. The motion was fully briefed, and the court heard oral argument on the motion on January 11, 2010. By Memorandum Order dated January 14, 2010, the court granted a joint motion by the parties to stay further proceedings, including discovery-related activities, in this case pending the court's decision on the instant motion. The court also indicated therein that it required additional information in connection with the instant motion and, to that end, ordered the parties to file supplemental submissions detailing the benefits plaintiff has received under the Virginia Workers' Compensation Act, Title 65.2 of the Code of Virginia (the "Virginia Act"), and the federal Longshore and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901 *et seq.* (the "Longshore Act"), as well as information regarding the processes involved in him applying for, receiving, and appealing the denial of such federal and state benefits. Plaintiff filed his court-ordered submission on January 28, 2010, and defendant filed its response on February 10, 2010. Plaintiff did not file a reply to defendant's response. The court believes it now has all of the factual information it considers necessary to render an informed decision on the instant motion. For the reasons stated herein, the court **DENIES** defendant's motion for summary judgment, but also states, pursuant to 28 U.S.C. § 1292(b), that it is of the opinion that this Opinion and Order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from this Opinion and Order to the United States Court of Appeals for the Fourth Circuit will materially advance the ultimate termination of this litigation. Consequently, this matter will continue to be **STAYED** until further order of this court or the Fourth Circuit, and this court will **DENY** all other pending motions in this matter, without prejudice and with leave to re-file after such further order.[1]

---

1. In light of the fact that defendant requested at oral argument that the court include this language from 28 U.S.C. § 1292(b) to allow for the possibility of interlocutory appeal if it

## PROCEDURAL HISTORY

This matter was removed from the Norfolk Circuit Court to this court pursuant to this court's diversity jurisdiction on August 5, 2009. Defendant filed the instant motion on October 19, 2009. Plaintiff filed his memorandum in opposition to the instant motion on October 26, 2009. Defendant was granted leave to file a third-party complaint against W.M. Barr & Co., Inc. by Order of United States Magistrate Judge Tommy E. Miller dated October 27, 2009. On October 29, 2009, defendant filed its rebuttal brief in further support of the instant motion. On November 2, 2009, plaintiff filed a motion for leave to file a "surrebuttal" brief in further opposition to the instant motion. On that same date, defendant filed its third-party complaint against W.M. Barr & Co, Inc. On November 4, 2009, without leave of court, plaintiff filed his proposed "surrebuttal" brief, to which defendant objected and to which plaintiff, in turn, replied. By Memorandum Order dated November 20, 2009, the court denied plaintiff's motion for leave to file his "surrebuttal," and instead ordered oral argument on the instant motion, at which time both sides could fully argue their respective positions. On December 4, 2009, plaintiff filed a motion for leave to file supplemental documents supporting his opposition to the instant motion, which this court, by Memorandum Order entered earlier today, found to be moot in light of plaintiffs subsequent submission of these documents to the court at oral argument and in his court-ordered submission. The parties subsequently filed several other motions, most of which related to discovery, and at least one of which is still pending decision. The court heard oral argument on the instant motion on January 11, 2010, at which time plaintiff reiterated substantially all of the contents of his proposed "surrebuttal" brief, including the cases cited therein. Defendant voluntarily dismissed its third-party complaint against W.M. Barr & Co., Inc. pursuant to Rule 41(a)(1)(A)(i) on January 13, 2010.[2] As noted above, by Memorandum Order dated January 14, 2010, the court granted a joint motion by the parties to stay further proceedings in this case pending the court's decision on the instant motion, and requested additional information from the parties, which the parties subsequently provided. The jury trial in this matter is currently scheduled to commence on April 19, 2010.

## STANDARD OF REVIEW

Summary judgment is appropriate when the court, viewing the record as a whole and in the light most favorable to the nonmoving party, determines that there exists no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Terry's Floor Fashions, Inc. v. Burlington Industries, Inc.,* 763 F.2d 604, 610 (4th Cir.1985); Fed. R.Civ.P. 56(c). Although the initial burden obviously falls on the moving party, once the movant has properly filed evidence supporting summary judgment, the nonmoving party may not rest upon mere allegations in the pleadings, but must in-

denied the instant motion, the court anticipates that defendant will make application to the Fourth Circuit for such an appeal within ten days after the entry of this Opinion and Order. Should defendant choose not to make such an application, this court will address the stay and the status of any pending mo- tions in another Order after the period for such an application has elapsed.

2. It appears that this voluntary dismissal rendered moot the motion filed jointly by defendant and third-party defendant W.M. Barr & Co, Inc. for an extension of time to file responsive pleadings.

stead set forth specific facts in the form of exhibits and sworn affidavits illustrating a genuine issue for trial. *Celotex,* 477 U.S. at 322–24, 106 S.Ct. 2548; *Cray Commc'ns, Inc. v. Novatel Computer Systems, Inc.,* 33 F.3d 390, 393–94 (4th Cir.1994). In other words, while the movant must carry the burden to show the absence of a genuine issue of material fact, when such burden is met, it is up to the non-movant to establish the existence of such an issue. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548. When considering the non-moving party's submissions, "the facts and all reasonable inferences must be viewed in the light most favorable to the non-moving party." *Smith v. Va. Commonwealth Univ.,* 84 F.3d 672, 675 (4th Cir.1996) (*en banc*).

In determining whether the non-moving party has established the existence of a genuine issue of material fact, facts must be deemed "material" if they are necessary to the resolution of the case and "genuine" if they are based on more than speculation or inference. *Thompson Everett, Inc. v. Nat'l Cable Adver., L.P.,* 57 F.3d 1317, 1323 (4th Cir.1995). If, after reviewing the record, it appears that a "reasonable jury could return a verdict for [the non-movant], then a genuine factual dispute exists and summary judgment is improper." *Evans v. Techs. Applications & Serv. Co.,* 80 F.3d 954, 958–59 (4th Cir.1996); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ("The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.").

## ANALYSIS

■ Unlike the context of most summary judgment motions, there is no dispute as to the facts of this case. Instead, the sole question presented to the court by the instant motion is whether plaintiff's cause of action against defendant for negligence under the general maritime law of the United States may be precluded as a matter of law by the exclusivity provision of the Virginia Act, section 65.2–307 of the Code of Virginia.

## I. The Virginia Supreme Court's Approach: Balancing of State and Federal Interests

As plaintiff noted in his brief in opposition to defendant's motion for summary judgment ("Opp'n"), this case bears a striking resemblance to the Virginia Supreme Court's decision in *Mizenko v. Electric Motor & Contracting Co., Inc.,* 244 Va. 152, 419 S.E.2d 637 (1992). In *Mizenko,* the plaintiff was an employee of Abacus Temporary Services ("Abacus"), which had subcontracted with general contractor Metro Machine Corporation ("Metro") to provide skilled labor for the repair of the naval destroyer U.S.S. Compte de Grasse. *Id.* at 639. Metro had separately contracted Electric Motor & Contracting Co. ("Electric") to perform other maintenance work on the U.S.S. Compte de Grasse. *Id.* The plaintiff there alleged that he was injured by the actions of Electric, and he had received workers' compensation for his injuries through his employer (Abacus) under the Longshore Act. *Id.*

Similarly, in this case plaintiff was an employee of Tecnico Corporation ("Tecnico"), which subcontracted with general contractor BAE Systems to provide skilled labor for the repair of the U.S.S. Leyte Gulf. The only factual difference with respect to the relationship between the parties appears to be that, in this case, it was plaintiff's direct employer, Tecnico, and not the general contractor, BAE Systems, that subcontracted defendant to perform the work that was allegedly the source of

plaintiff's injury. It does not appear that this factual divergence has any impact on the applicable legal analysis.

In *Mizenko*, a majority of the Virginia Supreme Court affirmed the dismissal of the plaintiff's claim against the general contractor, Metro, but reversed the dismissal of the plaintiff's claim against the sub-contractor, Electric. 419 S.E.2d at 645; *see also Metro Mach. Corp. v. Mizenko*, 244 Va. 78, 419 S.E.2d 632 (1992) (companion decision regarding Metro's appeal of the trial court's denial of its motion for summary judgment). The court recognized that although the Virginia Act contained language explicitly precluding the availability of other remedies, the plaintiff's cause of action had been asserted, as in this case, as a federal maritime tort within the jurisdiction of admiralty, and not merely under the common law.[3] *Mizenko*, 419 S.E.2d at 639–40. The court noted that although the Longshore Act, which in some respects parallels the Virginia Act, provides that "an employee may not bring a negligence action against a 'person in the same employ,'" it nevertheless "permits an injured employee to bring a negligence action against a third party." *Id.* at 641–42. The court discussed "whether a subcontractor is a 'person in the same employ' with an individual employee of the prime contractor," and concluded on the basis of decisions from several other jurisdictions that it is not. *Id.* at 642. In sum, the court determined that the broad language of the Virginia Act's exclusivity provision precluded the filing of certain actions that the Longshore Act did not. Consequently, to the extent there existed a conflict between federal general maritime law and the relevant provisions of Virginia statutory law, the court had to balance the competing interests and policies served by these bodies of law and decide which were of greater import. *Id.* at 640–41(noting that "[w]here there is an admiralty-state law conflict, courts have examined and weighed the respective interests behind each law to determine whether federal law should supplant the application of state law.").

With regard to the balancing of the competing state and federal interests actually implicated in *Mizenko*, the Virginia Supreme Court acknowledged that the plaintiff "ha[d] a substantive admiralty right against Electric arising from the general maritime law," which the court viewed "as a compelling federal aspect in [its] review process." *Id.* at 642–43. With regard to Virginia's countervailing interest, the court held "that the state interest in this case is minimal." *Id.* at 644. The court proceeded to justify this holding by observing:

> Since Mizenko is receiving workers' compensation benefits under the Longshore Act, rather than the Virginia Act, we are not confronted with a situation where a worker is attempting to repudiate one portion of the Virginia Act [*i.e.*, the exclusivity provision] while he is accepting benefits under another portion of the Act. Thus, the balance struck by the Virginia Act, in providing compensation to workers, in return for which immunity is afforded to defined employers, is not implicated in this case.

*Mizenko*, 419 S.E.2d at 644. On the basis of these considerations, the court ultimately held:

> activity. *See Mizenko*, 419 S.E.2d at 640. Accordingly, it appears undisputed that plaintiff's claim is properly considered a federal maritime tort arising within the jurisdiction of admiralty.

---

**3.** There does not appear to be any dispute in this case that plaintiff's alleged injuries occurred on the navigable waters of the United States, or that the ship repair activities that allegedly caused plaintiff's injuries had a significant relationship to traditional maritime

[T]here is no state interest present in this case which outweighs the need for uniformity in the application of the general maritime law. To take away Mizenko's federal right of action, merely because his ship was located in navigable waters in a Virginia port, would undermine basic principles of federal uniformity with no measurable benefit resulting to the state.

*Id.* Consequently, the court refused to "give effect . . . to the Virginia Act's exclusivity provision" and, over the dissent of three Justices, including the Chief Justice, reversed the trial court's dismissal of the plaintiff's claim against Electric. *Id.* at 644–45.

Defendant claimed in support of the instant motion, as it did in its Answer and Plea in Bar prior to this case's removal, that plaintiff's sole remedy lies in the provisions of the Virginia and Longshore Acts, and that plaintiff's tort claim in this case is therefore precluded as a matter of law. Defendant emphasized that, unlike the plaintiff in *Mizenko,* plaintiff here *has* sought to avail himself of benefits under the Virginia Act. Defendant argued on that basis that the analysis in the instant case therefore points to the opposite outcome; namely, that the Virginia Act's exclusivity provision *should* be given effect, because plaintiff is allegedly attempting to repudiate that provision while simultaneously seeking benefits under other provisions of the Virginia Act. Consequently, defendant argued, Virginia's strong state interest in the enforcement of its workers' compensation law, including the immunities granted by it, is implicated in this case, and should trump any general federal interest in maintaining uniformity in the application of maritime law. *See id.* at 644.

## II. The Supremacy Clause Approach

Plaintiff's opposition to the instant motion is premised entirely on the (undisputed) fact that plaintiff's claim against de-

fendant is properly considered a federal maritime tort arising within the jurisdiction of admiralty. Plaintiff argues that it therefore makes no difference whether plaintiff has sought or recovered benefits under the Virginia Act, the Longshore Act, or both, because the Supremacy Clause of the United States Constitution precludes the Virginia Act's exclusivity provision from operating to deprive plaintiff of his federal maritime claim.

Despite the apparent inconsistency of this absolutist analysis with the detailed balancing test employed by the Virginia Supreme Court in *Mizenko,* plaintiff appears to have support in case law for this position. In *Garvin v. Alumax of South Carolina, Inc.,* 787 F.2d 910 (4th Cir.1986), the Fourth Circuit addressed a factual situation somewhat analogous to the instant case. In *Garvin,* the plaintiff longshoreman was injured while performing routine maintenance on a ship loader located on a pier. Consequently, plaintiff's claim fell within the so-called "twilight zone," within which the United States "Supreme Court held there was concurrent jurisdiction and the injured worker might safely proceed under either the [Longshore Act] or the state's workmen's compensation act at his election." *Id.* at 915 (citing *Davis v. Dep't of Labor,* 317 U.S. 249, 63 S.Ct. 225, 87 L.Ed. 246 (1942)). The plaintiff in *Garvin* "chose, of course, to claim the higher benefits available under the federal statute [*i.e.,* the Longhsore Act], and the question is whether that choice limits the defenses available to a contractor in the position of [the defendant] when faced with a tort action founded entirely upon South Carolina law." 787 F.2d at 916.

The Fourth Circuit approached the case "[a]gainst the backdrop of congressional concern to preserve and protect application by the states of their own workmen's compensation schemes and the purpose of

the [Longshore Act]'s 1972 landward extension to 'supplement,' not to 'supplant,' state compensation acts." *Id.* (quoting *Sun Ship Inc. v. Pennsylvania,* 447 U.S. 715, 100 S.Ct. 2432, 65 L.Ed.2d 458 (1980)). The court found that the applicable state "rule of immunity of a contractor in the position of [the defendant] is different from that under the [Longshore Act], but not in conflict with it, for Congress has not purported to prescribe the immunity rules to be applied by states in actions brought upon state law claims," such as the claim advanced by the plaintiff there. *Garvin,* 787 F.2d at 917. The court explained: "The federal immunity rule is to be applied when the third party claim is a federal claim; when the third party claim is a state law claim, the immunity rules of that state are to be applied." *Id.* Thus, in light of the fact that the plaintiff raised only a state law tort claim, the Fourth Circuit panel held, over Circuit Judge Mumaghan's dissent, that the defendant was immune to that claim pursuant to state law. *Id.* at 918.

In *Ward v. Norfolk Shipbuilding & Drydock Corp.,* 770 F.Supp. 1118 (E.D.Va. 1991), the District Court addressed an issue even closer to the instant one, namely, "whether an injured worker who is receiving benefits under the [Longshore Act] may be barred by a state-law immunity available to 'statutory employers' from asserting a tort claim against a contractor for whom his immediate employer was performing work at the time of the injury." *Id.* at 1119. The defendant there argued that the Virginia Act applied to the plaintiff's federal maritime tort claim "because plaintiff was a harbor worker injured on navigable waters," and therefore "his cause of action [fell] within the 'twilight zone'—that area where an injured harbor worker is eligible for benefits under either the [Longshore Act] or under a state compensation statute, in this case the Virginia Act." *Id.* at 1120.

The District Court discussed the Fourth Circuit's decision in *Garvin* as "[t]he closest case presenting the issue in the Fourth Circuit," and noted *Garvin*'s holding that "if [the plaintiff] has a federal claim against [the defendant general contractor], the federal immunity rule applies, which operates to provide immunity only for [the plaintiff's] immediate employer ... thereby leaving [the general contractor defendant] subject to suit." *Ward,* 770 F.Supp. at 1120–21. The District Court noted that "[t]his rule ... is consistent with the Supreme Court's holding in *Pope & Talbot, Inc. v. Hawn,* in which the Court stated that 'a state may not deprive a person of any substantial admiralty rights as defined in the controlling acts of Congress or by interpretative decisions of this Court.'" *Ward,* 770 F.Supp. at 1121 (quoting *Pope & Talbot, Inc. v. Hawn,* 346 U.S. 406, 410, 74 S.Ct. 202, 98 L.Ed. 143 (1953)) (internal citation omitted). The District Court explained that "[t]he ultimate issue in this case, then, is whether [the plaintiff] has a federal maritime cause of action against [the general contractor defendant]." *Ward,* 770 F.Supp. at 1121. The District Court concluded that "[b]ecause federal law provides for the cause of action that [the plaintiff] seeks to assert against [the defendant], the Virginia Act cannot make [the defendant] immune from the cause of action." *Id.* at 1122. Consequently, the District Court denied the general contractor defendant's motion for summary judgment.

## III. Discussion

### A. The Inconsistency of Mizenko with Garvin and Ward

It is clear from the foregoing discussion that the Virginia Supreme Court's balancing test approach in *Mizenko,* which defendant urges this court to employ, is inconsistent with the apparent Supremacy

Clause-based approach of *Garvin* and *Ward,* which plaintiff urges this court to employ. Plaintiff's proposed analysis effectively ends with the court's determination of whether or not plaintiff's claim is properly construed to be a recognized claim relating to events that occurred on navigable waters in connection with traditional maritime activities. If the court construes his claim as such, plaintiff argued, the benefits he sought or received under the Virginia Act or the Longshore Act are irrelevant, and plaintiff's claim must survive summary judgment. However, contrary to plaintiff's argument, under *Mizenko* the court's analysis would not end, but instead *begin,* with the determination that a plaintiff's claim is properly considered a federal maritime tort claim. Once such a determination is made, the court would then have to balance that federal interest against any countervailing state interests to determine which should prevail.

The court notes that none of these cases actually involved the precise factual scenario that this case presents. *Garvin* dealt with a state law tort claim and a defense based on the immunity provision of South Carolina's workers' compensation law. *Ward* and *Mizenko* both dealt with federal maritime tort claims by plaintiffs who had only sought benefits under the Longshore Act. Admittedly, the *Mizenko* court explicitly included consideration of the absence of claims for benefits under the Virginia Act in its analysis. Likewise, the District Court in *Ward* noted that the plaintiff there "has asserted no claim created by or arising out of Virginia law" in discussing the federal maritime nature of his tort claim. 770 F.Supp. at 1122. The court also notes the irony that plaintiff's argument in opposition to the instant motion ignores entirely the detailed balancing test undertaken by the Virginia Supreme Court in *Mizenko,* the very case plaintiff originally cited in support of his argument

and characterized as "strikingly similar" to the instant case. Opp'n at 2. However, as discussed below, it may well be that the correct approach to analyzing this issue renders that particular factual variation irrelevant.

After a careful review of relevant case law and extensive deliberation—both of which, of necessity, extended far beyond the relatively cursory arguments and citations by the parties in this case—the court believes that the federal cases on which the Virginia Supreme Court relied in formulating its balancing test in *Mizenko* misstated the proper nature of that test. The court will first discuss the competing lines of federal cases involved, and then explain its reasoning in rejecting the line of cases that provided the balancing test used in *Mizenko.*

### B. The *Mizenko* Balancing Test's Basis in Eleventh Circuit Jurisprudence

The Virginia Supreme Court indicated that "[i]n making this evaluation, we employ the *Chelentis* analysis as explained in *Steelmet Inc. v. Caribe Towing Corp.,* 779 F.2d 1485, 1488 (11th Cir.1986)." *Mizenko,* 419 S.E.2d at 641 (citing *Chelentis v. Luckenbach S.S. Co.,* 247 U.S. 372, 38 S.Ct. 501, 62 L.Ed. 1171 (1918)). The language from *Steelmet* quoted in part in *Mizenko* reads in its entirety:

> Summarizing this body of law: One must identify the state law involved and determine whether there is an admiralty principle with which the state law conflicts, and, if there is no such admiralty principle, consideration must be given to whether such an admiralty rule should be fashioned. If none is to be fashioned, the state rule should be followed. *Wilburn Boat [Co. v. Fireman's Fund Ins. Co.,* 348 U.S. 310, 75 S.Ct. 368, 99 L.Ed. 337 (1955) ]. If there is an admiralty— state law conflict, the comparative inter-

ests must be considered—they may be such that admiralty shall prevail, as in *Kossick* [*v. United Fruit Co.*, 365 U.S. 731, 81 S.Ct. 886, 6 L.Ed.2d 56 (1961)], or if the policy underlying the admiralty rule is not strong and the effect on admiralty is minimal, the state law may be given effect, as in *Olympic Towing* [*Corp. v. Nebel Towing Co.*, 419 F.2d 230 (5th Cir.1969), *cert. denied*, 397 U.S. 989, 90 S.Ct. 1120, 25 L.Ed.2d 396 (1970)].

*Steelmet*, 779 F.2d at 1488.

Admittedly, the Virginia Supreme Court's gloss on this language in *Steelmet* was substantially the same as the United States Court of Appeals for the Eleventh Circuit's own interpretation of it in *Brockington v. Certified Electric, Inc.*, 903 F.2d 1523 (11th Cir.1990), *cert. denied*, 498 U.S. 1026, 111 S.Ct. 676, 112 L.Ed.2d 668 (1991). In *Brockington*, the Eleventh Circuit explained, "[t]he general rule is that with admiralty comes the application of substantive admiralty law and, absent a relevant statute, the general maritime law, as developed by the judiciary, will apply." *Id.* at 1529 (citing *E. River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 864, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986)). The Eleventh Circuit continued:

> As is the case with most general rules, there are exceptions to the usual supremacy of federal maritime law. In fact, the Supreme Court pointed out that "the claim of federal supremacy [in admiralty cases] is adequately served by the availability of a federal forum in the first instance and of review in this Court to provide assurance that the federal interest is correctly assessed and accorded due weight."

*Brockington*, 903 F.2d at 1529–30 (quoting *Kossick*, 365 U.S. at 739, 81 S.Ct. 886) (alteration in original). "Consequently,

federal courts sitting in admiralty should, according to the dictates of comity, acknowledge and protect state-created rights, even at times to the exclusion of an existing maritime law." *Brockington*, 903 F.2d at 1530. Then, quoting the same language from *Steelmet* quoted in *Mizenko*, the Eleventh Circuit proceeded to balance the federal interest in promoting uniformity in maritime law, which it described as "the driving consideration underlying the preference for application of federal maritime law in admiralty cases," against the "[c]ountervailing state interests," such as "the interest in being permitted to regulate independently matters of local concern without interference by the federal government." *Id.* (citing *Askew v. Am. Waterways Operators*, 411 U.S. 325, 93 S.Ct. 1590, 36 L.Ed.2d 280 (1973) and *Just v. Chambers*, 312 U.S. 383, 388, 61 S.Ct. 687, 85 L.Ed. 903 (1941)). The Eleventh Circuit engaged in an extensive analysis, concluding that "the state has a strong interest in application of its worker's compensation law with no comparable interest to tip the balance in favor of application of general maritime law." *Brockington*, 903 F.2d at 1532. Accordingly, "[b]ecause [the plaintiff] ha[d] recovered under the [Georgia workers' compensation] statute, the exclusivity provision precludes any further recovery," and the defendant's "motion for summary judgment with respect to plaintiffs' claim under general maritime law" was granted. *Id.* at 1533.

### C. The Fifth Circuit's Critical Analysis of the Eleventh Circuit's Balancing Test

The Eleventh Circuit's articulation of the appropriate balancing test, however, is neither the only possible reading of the relevant Supreme Court jurisprudence nor even necessarily a widely accepted one.[4]

---

**4.** It should be noted, however, that at the time the Virginia Supreme Court decided *Mizenko*, the Eleventh Circuit's decision in *Brockington*

was less than two years old, and had been

Indeed, the United States Court of Appeals for the Fifth Circuit has explicitly rejected aspects of the Eleventh Circuit's approach in Brockington. *See Green v. Vermilion Corp.*, 144 F.3d 332, 336–37 (5th Cir.1998). *cert. denied,* 526 U.S. 1017, 119 S.Ct. 1251, 143 L.Ed.2d 349(1999). In *Green,* the Fifth Circuit discussed its prior decision in *Thibodaux v. Atlantic Richfield Co.*, 580 F.2d 841 (5th Cir.1978), in which the court was " 'squarely presented with the issue of whether an exclusive remedy provision in a state workmen's compensation statute can operate to deprive a party of a cause of action afforded by federal maritime law.' " *Green,* 144 F.3d at 336 (quoting *Thibodaux,* 580 F.2d at 846). The Fifth Circuit in *Thibodaux* "concluded that relevant Supreme Court and Fifth Circuit precedent made 'it clear that an exclusive remedy provision in a state workmen's compensation law cannot be applied when it will conflict with maritime policy and undermine substantive rights afforded by federal maritime law.' " *Green,* 144 F.3d at 336 (quoting *Thibodaux,* 580 F.2d at 847). The Fifth Circuit in *Thibodaux* thus "specifically held that 'the exclusive remedy provision of the Louisiana Workmen's Compensation Act' does not preclude a plaintiff from pursuing a claim for wrongful death occasioned in state territorial waters since the Supreme Court has expressly recognized such a suit under admiralty jurisdiction." *Green,* 144 F.3d at 336 (quoting *Thibodaux,* 580 F.2d at 847).

The Fifth Circuit in *Green* then proceeded to note that in *Brockington* "[t]he Eleventh Circuit appears to have charted a different course as it barred a plaintiff from asserting a negligence claim under general maritime law where an exclusivity provision of a state workers' compensation scheme applied." *Green,* 144 F.3d at 336–37. The Fifth Circuit acknowledged that

"[t]here are conflicting lines deciding the force to be given an exclusive remedy provision of a state workers' compensation statute in the maritime context," noting that "[a]pparently the court in *Brockington* only unearthed the line of Supreme Court cases giving preclusive effect to state workers' compensation statutes" and explaining that since the Fifth Circuit's holding relied heavily on the "more venerable line of Supreme Court precedent which the Eleventh Circuit did not treat," it thought that the split with the Eleventh Circuit created by its holding would be "short-lived." *Id.* at 339 n. 3 and accompanying text.

The Fifth Circuit observed that "[o]ne line of cases unequivocally holds that state workers' compensation statutes can not preclude an employee from asserting a general maritime negligence claim against his employer for injuries sustained on navigable waters during the course of his employment." *Id.* (collecting cases). That line of cases draws its authority from even earlier "cases refusing to subordinate federal admiralty principles to the dictates of state law." *Id.* at 339–40 (collecting cases). The court noted, however, that "other cases run directly contrary to" the foregoing lines of cases, "as they purport to hold that the exclusive remedy provision of a state workers' compensation statute precludes an employee from asserting a general maritime negligence claim against his employer." *Id.* at 340 (collecting cases). The Fifth Circuit further explained that "[t]hough there is an apparent rift in precedent, the Supreme Court harmonized its cases on the grounds that the state workers' compensation statutes could only apply where the maritime tort involved matters of local concern which had remote or no relation to navigation or maritime commerce." *Id.* (citing *Director, Of-*

denied a writ of certiorari to the United States Supreme Court.

fice of Workers' Comp. Programs, U.S. Dep't of Labor v. Perini N. River Assocs., 459 U.S. 297, 306, 103 S.Ct. 634, 74 L.Ed.2d 465 (1983) & *John Baizley Iron Works v. Span*, 281 U.S. 222, 230–31, 50 S.Ct. 306, 74 L.Ed. 819 (1930)). Indeed, the Fifth Circuit emphasized that "the constant theme of these Supreme Court opinions is that the uniformity of admiralty law must be preserved and that state law may be applied *only* where it works no 'material prejudice to the essential features of the general maritime law.'" *Green*, 144 F.3d at 340–41 (quoting *Baizley*, 281 U.S. at 230, 50 S.Ct. 306) (emphasis added). On the basis of its extensive analysis, the Fifth Circuit disagreed with the Eleventh Circuit's interpretation in *Brockington* of *Thibodaux* and *King v. Universal Elec. Constr.*, 799 F.2d 1073 (5th Cir.1986), and emphasized that "[t]he key factor is maintaining uniformity in admiralty law and preserving the rights granted to maritime workers, not the degree of harm the worker suffers." *Green*, 144 F.3d at 341. The Fifth Circuit concluded that the relevant Supreme Court and Fifth Circuit precedent required it to "hold that the exclusive remedy provision of the Louisiana Workers' Compensation Act does not preclude [the plaintiff] from asserting his general maritime claim against [the defendant employer] for the non-fatal injuries he sustained during the course of his employment while upon navigable waters." *Id.*

### D. Comparing the Fifth and Eleventh Circuit Tests with Garvin and Ward

Although the Fourth Circuit's opinion in *Garvin* contained a discussion of the relevant historical context that was broadly similar to the Fifth Circuit's exegesis in *Green—see Garvin*, 787 F.2d at 915–17— the Fourth Circuit was not faced there with a situation in which an actual conflict existed between federal and state law. Therefore, the Fourth Circuit did not need to discuss in detail the nature of the balancing test that should apply in such situations. *See id.* at 918 ("Since there is no conflict between differing rules of immunity and application of South Carolina's rule will not frustrate the effectiveness of any federal law ... the contractor ... is immune from this state tort claim."). Consequently, this court does not believe that *Garvin* authoritatively indicates the Fourth Circuit's position with respect to this Circuit split, which, contrary to the Fifth Circuit's expectations in *Green*, does not yet appear to have been resolved by the United States Supreme Court.

▮▮▮▮ Nevertheless, this court is of the opinion that the Fifth Circuit's analysis in *Green* hews closer than the Eleventh Circuit's analysis in *Brockington* to the tenor of the Fourth Circuit's decision in *Garvin* and the prior decision of this District Court in *Ward*. Moreover, and perhaps more importantly, the court believes that *Green*, and not *Brockington*, correctly states the nature of the test for the resolution of conflicts between state law and admiralty. Contrary to the Virginia Supreme Court's suggestion that courts faced with such conflicts must "examine[ ] and weigh[ ] the respective interests behind each law to determine whether federal law should supplant the application of state law"—*Mizenko*, 419 S.E.2d at 640–41—the proper focus of the test is, as plaintiff urges in his opposition to the instant motion, primarily on the federal maritime nature of plaintiffs claim. The applicable law, properly construed, does *not* provide for a balancing test in the traditional sense, under which the relative strength of either side's interests can potentially "tip the balance in favor of [or against] application of general maritime law." *Brockington*, 903 F.2d at 1532; *see also Mizenko*, 419 S.E.2d at 644. Instead, a court must first determine whether the litigant has properly as-

serted a substantive right that is recognized by federal general maritime law. If the court finds that the litigant has, in fact, asserted such a right, the court may give effect to otherwise-applicable state law if, and *only* if, the state law in question does not operate to deprive the litigant of that right. *Hawn*, 346 U.S. at 409–10, 74 S.Ct. 202; *Green*, 144 F.3d at 336–37; *Thibodaux*, 580 F.2d at 846–47; *Ward*, 770 F.Supp. at 1121–22. In the instant case, the Virginia Act's exclusivity provision would operate to preclude plaintiff's maritime tort claim entirely. Such a result would, of course, be the quintessence of deprivation. Accordingly, this court cannot allow the Virginia Act to preclude plaintiff's federal maritime tort claim, and defendant's motion for summary judgment must therefore be denied.

### E. The Possibility of the Opposite Result Using the Mizenko Balancing Test

As previously indicated, the court's deliberations in this case were neither cursory nor uncomplicated. Had the court confined itself to the arguments in the parties' briefs, which, in retrospect, merely alluded to the tips of the dueling icebergs in this case, the Virginia Supreme Court's analysis in *Mizenko* might well have led this court to the opposite result with respect to the instant motion. As noted above, the Virginia Supreme Court's opinion in *Mizenko* contained language relating to the factual situation presented by the instant case,[5] and this court might well have concluded, using the Eleventh Circuit balancing test employed in *Mizenko*, that plaintiff's conduct in this case justified preclusion of his federal maritime claim. Although the Fifth Circuit test, which this court has determined to be the correct one, does not appear to take into account the comparative significance of the countervailing state interests—or, for that matter, a litigant's own conduct vis-a-vis the state laws implicated—the court nevertheless believes it relevant, especially in light of the apparent Circuit split on this issue, to discuss at least briefly the state interests and factual considerations that might merit the opposite result under the Eleventh Circuit's balancing test.

Unlike in *Mizenko*, this court *is* "confronted with a situation where a [plaintiff] is attempting to repudiate one portion of the Virginia Act [*i.e.*, the exclusivity provision] while he is" at least *seeking* "benefits under another portion of the Act." *Mizenko*, 419 S.E.2d at 644. As discussed in far greater factual detail in the court's Memorandum Order entered earlier today, in this case, plaintiff's employer secured for him benefits under the Longshore Act after he was injured. Plaintiff thereafter separately sought, through counsel, supplemental benefits under the Virginia Act, and prevailed at a hearing before a Deputy Commissioner of the Virginia Workers' Compensation Commission (the "Commission"), who awarded him substantial supplemental benefits. However, plaintiff's employer appealed that award to the full Commission, and plaintiff therefore had

---

**5.** Plaintiff's counsel claimed at oral argument that the Virginia Supreme Court never actually reached this issue in *Mizenko,* and that this language was merely *dicta.* Regardless of whether the Virginia Supreme Court's comments in this regard retain any legal significance under the approach adopted herein, this court disagrees that those comments were merely *dicta.* Instead, as noted above,

they appear to have been the explicit basis for the Virginia Supreme Court's determination that the state interest in *Mizenko* was minimal. *See* 419 S.E.2d at 644. In other words, it was the *absence* of any Virginia Act benefits being paid to the plaintiff that led the Virginia Supreme Court to characterize the state interests implicated in that case as minimal.

not yet actually *received* those supplemental Virginia Act benefits as of the date of oral argument before this court on the instant motion. Shortly after oral argument, during which the relevance of plaintiff's receipt of Virginia Act benefits under the Virginia Supreme Court's analysis in *Mizenko* was discussed in some detail, plaintiff entered into a Joint Motion and Stipulations with his employer before the Commission to vacate the Deputy Commissioner's award. The Commission accepted the Joint Motion and Stipulations, vacated the Deputy Commissioner's award, and dismissed both the appeal and plaintiff's underlying claim for benefits, without prejudice, on January 26, 2010.

These facts show that this is not a case in which plaintiff merely filed paperwork with his employer after being injured that resulted in him unwittingly receiving benefits under the Virginia Act instead of, or in addition to, the Longshore Act. Rather, this is a case in which plaintiff, after having already received benefits under the Longshore Act, made the affirmative decision to avail himself of additional benefits available under the Virginia Act, and retained counsel to do so. "Thus, the balance struck by the Virginia Act, in providing compensation to workers, in return for which immunity is afforded to defined employers," *is* "implicated in this case." *Id.* Defendant argues that "[t]he Commonwealth has a substantial interest in application of its workers' compensation statute, in applying the Virginia Act uniformly, and in protecting and providing compensation to its injured citizens." Rebuttal Brief in Support of Defendant's Motion for Summary Judgment ("Rebuttal") at 3.[6]

Moreover, the court also notes that notwithstanding the Virginia Supreme Court's characterization of the plaintiff's "substantive admiralty right against" the defendant as being "a compelling federal aspect" in its balancing—*Mizenko*, 419 S.E.2d at 642–43—this court could conceivably have reached the opposite result using the *Mizenko* balancing test. Such a result would have been supported both by *Mizenko*'s subsequent discussion of the fact that the plaintiff there was not receiving benefits under the Virginia Act, as well as the Eleventh Circuit's comment that it is recognized in the context of federal general maritime law "that uniformity simply for the sake of uniformity serves no inherent good." *Brockington*, 903 F.2d at 1531. On the strength of those authorities, this court could have concluded that plaintiff's opportunistic efforts in this case to "have it both ways," so to speak—*i.e.*, seeking to avail himself of supplemental state workers' compensation benefits under the Virginia Act while also filing a claim in this court that is expressly prohibited by the exclusivity provision of the very statute under which he seeks to recover those supplemental benefits—ran afoul of Virginia's strong state interest in the application of its own workers' compensation laws. On that basis, this court could have granted defendant's motion for summary judgment.

### F. Other Arguments, State Interests, and Factual Considerations

Turning to other possible considerations, it is at least arguable that the Virginia Act's exclusivity provision, applied in the manner suggested by the Virginia

---

**6.** The court is utterly mystified by defendant's citation of *Stadter v. Siperko*, 52 Va.App. 81, 661 S.E.2d 494, 498 (2008), for this proposition. *Stadter* deals with the standards for granting non-parents and non-custodial parents visitation rights to a child, and does not appear to be even remotely relevant to the issues involved in this case. However, *Brockington*, which is also cited by plaintiff in this connection, clearly supports this proposition. *See* 903 F.2d at 1531–33. *Garvin* also acknowledged the history of Congressional deference to such interests. *See* 787 F.2d at 915–18: *see also Mizenko*, 419 S.E.2d at 644.

Supreme Court in *Mizenko,* would not in all cases thwart the federal interest in the uniform availability of a general maritime tort claim to injured maritime workers. Had plaintiff, like the plaintiffs in *Garvin, Ward,* and *Mizenko,* sought compensation only under the Longshore Act, and not under the Virginia Act, there would appear to have been no question that plaintiff could pursue his general maritime tort claim against defendant notwithstanding the exclusivity provision of the Virginia Act. In other words, the Virginia Act would in no way foreclose the availability of a federal maritime tort claim to plaintiff *until plaintiff himself elected to subject himself to the Virginia Act's exclusivity provision by affirmatively availing himself of its benefits.* Such a mode of analysis might not implicate federalism and Supremacy Clause concerns so much as questions of the limits of contract, release, and waiver: *i.e.,* whether an injured worker may contract effectively to waive his right to bring a federal maritime tort claim in exchange for access to supplemental state disability benefits. *But see, e.g., Calbeck v. Travelers Ins. Co.,* 370 U.S. 114, 131, 82 S.Ct. 1196, 8 L.Ed.2d 368 (1962) (holding that acceptance of payments under the Louisiana State Compensation Act "does not constitute an election of the remedy under state law precluding recovery under the Longshoremen's Act").

On the other hand, it is not necessarily clear from the text of the Virginia Act's exclusivity provision that its applicability is predicated upon actually seeking or receiving benefits under other provisions of the Virginia Act. See Va.Code § 65.2–307 ("The rights and remedies herein granted to an employee *when his employer and he have accepted the provisions of this title respectively to pay and accept compensation* on account of injury or death by accident shall exclude all other rights and remedies of such employee ....") (emphasis added). Indeed, the dissent in *Mizenko* argued in this connection that the plaintiff there "presumptively accepted the [Virginia Act]'s provisions when he undertook employment with Abacus." *Mizenko,* 419 S.E.2d at 652 (Lacy, J., dissenting). The dissent further noted that the United States Supreme Court had previously characterized Oregon's workers' compensation statute as a " 'contract,' non-maritime in nature," that "define[d] the rights between the parties without contemplation of the general system of maritime law." *Id.* (discussing *Grant Smith–Porter Ship Co. v. Rohde,* 257 U.S. 469, 475–76, 42 S.Ct. 157, 66 L.Ed. 321 (1922)). Under such an interpretation, plaintiff was bound by the exclusivity provision of the Virginia Act from the time of his initial employment by Tecnico, and not as the result of any *quid pro quo* transaction occurring at the time he was injured, or when he first sought supplemental benefits under the Virginia Act for those injuries. Consequently, if the exclusivity provision were given effect in this manner, it arguably would operate to preclude plaintiff's federal maritime tort claim [7] *regardless* of whether plaintiff actually sought to avail himself of benefits under the Virginia Act, rendering the specter raised by

---

**7.** Indeed, the language of the Virginia Act's exclusivity provision is arguably broad enough to be read as purporting to preclude not only tort claims, but even the receipt of benefits under the Longshore Act—a reading that would place the Virginia Act in direct opposition to the express purposes of the Longshore Act and, thus, be clearly invalid under the Supremacy Clause. *But see, e.g.,*

*Newport News Shipbuilding & Dry Dock Co. v. Director, Office of Workers' Comp. Programs, U.S. Dep't of Labor,* 583 F.2d 1273, 1277–78 (4th Cir.1978) (holding that an injured worker's initial "election" to seek state compensation does not implicate the exclusivity provision to preclude the worker from later seeking compensation under the Longshore Act).

the Virginia Supreme Court in *Mizenko*—*i.e.*, injured workers affirmatively seeking benefits under the Virginia Act while simultaneously flouting its exclusivity provision, as plaintiff sought to do in this case—entirely irrelevant, as a legal matter, to the analysis.

Turning to another consideration in this case, the court notes the Virginia Supreme Court's reference in *Mizenko* to "the balance struck by the Virginia Act, in providing compensation to workers, in return for which immunity is afforded to defined employers." 419 S.E.2d at 644. The state's interest in enforcing its workers' compensation laws might properly be framed as an interest in honoring the bargain struck by the state government on behalf of employers *and* employees within the state. Indeed, as the Eleventh Circuit noted in *Brockington:*

> To foreclose the operation of [the Georgia Workers' Compensation Act] in favor of application of maritime law would result in introduction of the very uncertainty sought to be avoided by parties who contract pursuant to the Act. Unable to anticipate all the other potential bases for recovery, an employer would avoid contracting pursuant to a statute which would hold it to its responsibilities but not provide the bargained-for protections.

903 F.2d at 1533. Accordingly, an injured worker's claims against his or her employee(s), statutory or otherwise, would clearly implicate the state's interest in enforcing the bargain struck by its workers' compensation laws, because both employer and employee are participants and reciprocal beneficiaries of that same bargain: the employer pays for workers' compensation insurance that provides benefits to its employee in case of injury. In this case, however, plaintiff's claim is against Capitol Finishes, Inc., a Maryland-based third party subcontractor that was hired by plaintiff's employer, Tecnico, which was itself a subcontractor to the general contractor, BAE Systems. Plaintiff and defendant are thus not participants in the same bargain as plaintiff and Tecnico. Unlike plaintiff's employer, the record currently before the court does not appear to suggest that defendant was paying into the Virginia workers' compensation scheme for the benefit of plaintiff. Arguably, therefore, defendant is benefitting from the broad language of the Virginia Act's exclusivity claim, to the detriment of plaintiff, despite having conferred no benefit upon plaintiff in the bargain.

### G. The Appropriateness of Interlocutory Appeal of This Opinion and Order

The foregoing discussion suggests that the legal question that lies at the core of the instant motion is the subject of a Circuit split, with regard to which the Fourth Circuit has not yet explicitly taken a position. Although this court's analysis has led it to believe that the Fifth Circuit's mode of analysis is closer to both the Fourth Circuit's analysis in *Garvin* and what it believes to be the proper interpretation of the relevant Supreme Court jurisprudence, the court also recognizes that there appear to be principled legal arguments, as well as meaningful factual and policy considerations, that favor application of the Eleventh Circuit's mode of analysis and even, perhaps, reaching the opposite result with regard to the instant motion under that analysis. Accordingly, especially in light of the dispositive nature of the instant motion, the court believes that interlocutory appeal of this Opinion and Order to the Fourth Circuit is appropriate.

### CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment is **DE-**

**NIED.** However, the court further states, pursuant to 28 U.S.C. § 1292(b), that it is of the opinion that this Opinion and Order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from this Opinion and Order to the Fourth Circuit will materially advance the ultimate termination of this litigation. In anticipation of defendant's application to the Fourth Circuit for such an appeal, this matter will continue to be **STAYED** until further order of this court or the Fourth Circuit, and all other pending motions in this matter are hereby **DENIED,** without prejudice and with leave to re-file after such further order.[8]

The Clerk is **REQUESTED** to send a copy of this Opinion and Order to counsel of record for the parties.

It is so **ORDERED.**

**8.** As noted above, defendant's voluntary dismissal of its third-party complaint against W.M. Barr & Co., Inc. pursuant to Rule 41(a)(1)(A)(i) on January 13, 2010 rendered moot the joint motion by defendant and the third-party defendant for an extension of time to file responsive pleadings.