# CIRCUIT COURT OF THE CITY OF NORFOLK

Stella Jones

v.

Tecnico Corp.
and Capitol Finishes, Inc.

Case No. (Civil) CL09-4399

Jerome Campbell

v.

Tecnico Corp.
and Capitol Finishes, Inc.

Case No. (Civil) CL09-3533

September 9, 2011

BY JUDGE JERRAULD C. JONES

This matter is before the Court upon a special plea in bar raised by the defendants, Tecnico Corporation and Capitol Finishes, Inc., which asserts that the plaintiffs' cause of action for negligence under the general maritime law of the United States must be precluded as a matter of law by the exclusivity provision of the Virginia Workers' Compensation Act, Va. Code Ann. § 65.2-307. The defendants' special plea in bar is now before the Court for consideration.

*Facts*

On September 15, 2007, the plaintiffs, Stella Jones and Jerome Campbell (together "plaintiffs"), were employed by BAE and were working on board the vessel U.S.S. *Leyte Gulf* in the navigable waters of the United States. Jones, a third class mechanic, and Campbell, a pipe fitter, were each employed by BAE to perform repairs on the U.S.S. *Leyte Gulf.* BAE had

contracted with Tecnico Corporation ("Tecnico") to perform shipboard habitability work on the ship. Tecnico, in turn, subcontracted with Capitol Finishes, Inc. ("Capitol") to perform deck work. These facts are not in dispute. Plaintiffs allege that employees of Capitol utilized a highly flammable liquid in the course of their work and that the liquid and its fumes subsequently exploded causing plaintiffs' injuries. Plaintiffs allege negligence against Tecnico and Capitol (together "defendants") under the general maritime law of the United States. Plaintiffs have received some benefits under the Virginia Workers' Compensation Act ("Virginia Act") and under the Longshore Harbor Workers' Compensation Act ("Longshore Act").

## Discussion

Pursuant to Virginia Code § 65.2-307, the rights and remedies granted under the Virginia Act "shall exclude all other rights and remedies of such employee, his personal representative, parents, dependents, or next of kin, at common law or otherwise, on account of such injury, loss of service, or death." Va. Code Ann. § 65.2-307. Defendants argue that the Virginia Act provides the exclusive remedy for employees while working on the job, thus barring any recovery by plaintiffs. Plaintiffs, on the other hand, assert that the less restrictive exclusivity provision under the Longshore Act applies and that only BAE, as plaintiffs' employer and the provider of plaintiffs' workers' compensation, should be entitled to immunity. Plaintiffs therefore argue that they should not be barred from bringing a negligence action against defendant subcontractors.

### A. *Two Approaches*

There are, however, two approaches applied by the courts with regard to determining whether the exclusivity provisions of the Virginia Act or the Longshore Act apply. The first approach, applied by the Virginia Supreme Court in *Mizenko v. Electric Motor & Contracting Co.*, 244 Va. 152 (1992), is a balancing test which weighs the state and federal interests involved where there is a conflict between the state exclusivity provision and the general maritime law of the United States. The second approach, adopted by the U.S. District Court for the Eastern District of Virginia in *Moore v. Capitol Finishes, Inc.*, 699 F. Supp. 2d 772 (E.D. Va. 2010), is known as the Supremacy Clause approach, which precludes the application of the exclusivity provision of the Virginia Act if such application operates to deprive the plaintiff of his substantive rights under federal maritime law.

### 1. *The Mizenko Approach: Balancing State and Federal Interests*

In *Mizenko*, the plaintiff was an employee of Abacus Temporary Services ("Abacus"), which had subcontracted with Metro Machine Corporation ("Metro") to provide skilled labor for the repair of a naval destroyer. *Mizenko*, 244 Va. at 154. Metro separately subcontracted with Electric Motor & Contracting Co. ("Electric"). In the course of performing the subcontract, Electric employees used a toxic solvent. Mizenko alleged that he suffered injuries as a result of inhaling the fumes from this solvent. *Id.* The plaintiff received workers' compensation for his injuries through his employer, Abacus, under the Longshore Act. *Id.*

According to the court in *Mizenko*, in order to determine whether the Virginia Act's exclusivity provision should be given effect in this case, we must first determine whether the application of state law would conflict with the application of the general maritime law. If there is no conflict, the state law may be applied. If a conflict exists, we must evaluate the comparative state and federal interests involved.

*Id.* at 158. The court concluded that the application of the Virginia Act would bar Mizenko's action, whereas the action would not be barred by the application of the Longshore Act. Thus, the court was "faced with a conflict in the substantive rights afforded to Mizenko under the general maritime law and under state law." *Id.* at 160. Under the interest balancing approach, the court had to evaluate whether the federal interests outweighed the state interests in order to determine whether to give effect to the Virginia Act's exclusivity provision. *Id.*

The court acknowledged that the plaintiff "ha[d] a substantive admiralty right against Electric arising from the general maritime law," which the court viewed "as a compelling federal aspect in [its] review process." *Id.* at 161. With regard to Virginia's countervailing interests, the court held that "the state interest in this case is minimal." *Id.* at 163. The court proceeded to justify this holding by observing that:

> Since Mizenko is receiving workers' compensation benefits under the Longshore Act, rather than the Virginia Act, we are not confronted with a situation where a worker is attempting to repudiate one portion of the Virginia Act while he is accepting benefits under another portion of the Act. Thus, the balance struck by the Virginia Act, in providing compensation to workers, in return for which immunity is afforded to defined employers, is not implicated in this case.

*Id.* at 163. On the basis of these considerations, the court ultimately held that the federal interest in the uniform application of general maritime law outweighed the interests of the state. *Id.* According to the court, "[t]o take away Mizenko's federal right of action, merely because his ship was located in navigable waters in a Virginia port, would undermine basic principles of

federal uniformity with no measurable benefit resulting to the state." *Id.* As such, the court refused to give effect to the Virginia Act's exclusivity provision.

## 2. *The Supremacy Clause Approach*

The Fourth Circuit Court of Appeals dealt with a similar issue in *Garvin v. Alumax of South Carolina, Inc.*, 787 F.2d 910 (4th Cir. 1986), in which the plaintiff was injured while working on a pier adjacent to navigable waters. The plaintiff brought an action "grounded solely in common law negligence" against Alumax, the contractor who had hired the plaintiff's immediate employer. *Id.* at 911. Alumax defended on the basis that it was a "statutory employer" under the South Carolina workers' compensation act and was therefore immune from suit. The Court of Appeals for the Fourth Circuit agreed. The court held that, because Garvin's claim was a state law negligence claim, state law governed the scope of the claim, including the available defenses. *Id.* at 917. According to the court in *Garvin*, "[t]he federal immunity rule is to be applied when the third-party claim is a federal claim; when the third-party claim is a state law claim, the immunity rules of that state are to be applied." *Id.* This rule is consistent with the Supreme Court's holding that "a state may not deprive a person of any substantial admiralty rights as defined in controlling acts of Congress or by interpretative decisions of this Court." *Pope & Talbot, Inc. v. Hawn*, 346 U.S. 406, 410 (1953).

In *Ward v. Norfolk Shipbuilding & Drydock Corp.*, 770 F. Supp. 1118 (E.D. Va. 1991), a case with substantially similar facts to the instant cases, the U.S. District Court for the Eastern District of Virginia determined that the plaintiff had asserted a federal maritime cause of action against the defendant Norshipco. In determining such, the court pointed to the fact that Ward had been injured on navigable waters while doing repair work on a ship, what the court considered to be "a traditional maritime activity." *Id.* As such, the court held that Ward had asserted a federal maritime negligence cause of action against Norshipco and, because federal law provided Ward with the cause of action against Norshipco, federal immunity rules applied. As such, Norshipco was not immune from suit under the exclusivity provision of the Virginia Act. *Id.* at 1122.

On the basis of *Garvin* and *Ward*, the U.S. District Court for the Eastern District of Virginia decided *Moore v. Capitol Finishes, Inc.*, a companion case to the two cases presently before this Court. The plaintiff, Steven Moore, had been injured in the same explosion that injured plaintiffs Jones and Campbell. Moore, an employee of Tecnico, initially filed suit in the Norfolk Circuit Court, but the defendant, Capitol, removed the case to federal court. Capitol subsequently filed a motion for summary judgment. As in the instant case, Capitol asserted that Moore's action was barred by

the exclusivity provision of the Virginia Act. In his opinion, Judge Friedman explicitly denounced the application of the *Mizenko* balancing test, stating that the "applicable law, properly construed, does not provide for a balancing test in the traditional sense, under which the relative strength of either side's interests can potentially tip the balance in favor of or against application of general maritime law." *Moore*, 699 F. Supp. 2d at 782. Rather, the court adopted the Supremacy Clause approach from the Fifth Circuit Court of Appeals in *Green v. Vermilion Corp.*, 144 F.3d 332, 336 (5th Cir. 1998), holding that:

> [A] court must first determine whether the litigant has properly asserted a substantive right that is recognized by federal general maritime law. If the court finds that the litigant has, in fact, asserted such a right, the court may give effect to otherwise-applicable state law if, and only if, the state law in question does not operate to deprive the litigant of that right.

*Id.* at 783. In doing so, the court noted that the Supremacy Clause approach of the Fifth Circuit "hews closer . . . to the tenor of the Fourth Circuit's decision in *Garvin* and the prior decision of [this Court] in *Ward*." *Moore*, 699 F. Supp. 2d at 782.

In *Moore*, the court determined that there was no dispute as to the fact that the plaintiff's injuries occurred on the navigable waters of the United States or that the ship repair activities had a significant relationship to traditional maritime activity. "Accordingly," the court continued, "it appears undisputed that plaintiff's claim is properly considered a federal maritime tort arising within the jurisdiction of admiralty." *Id.* at 776, n. 3. The court concluded by determining that the "Virginia Act's exclusivity provision would operate to preclude plaintiff's maritime tort claim entirely." *Id.* at 783. Such a result would be the "quintessence of deprivation." *Id.* Accordingly, the court held that it could not allow the Virginia Act to preclude the plaintiff's federal maritime tort claim, and as such, Capitol's motion for summary judgment was denied. *Id.* The Fourth Circuit Court of Appeals subsequently denied Capitol's request for interlocutory appeal. *Moore v. Capitol Finishes, Inc.*, 699 F. Supp. 2d 772 (E.D. Va. 2010).

### B. *Application*

In asserting the *Mizenko* approach, defendants argue that the facts of the instant case are distinguishable from those in *Mizenko* because the plaintiffs have, in fact, filed a claim and received compensation under the Virginia Act. Defendants insist that the voluntary and diligent efforts taken by the plaintiffs to obtain benefits under the Virginia Act should tip the balance of interests in favor of the state and result in the application of the

Virginia Act's exclusivity provision, a result opposite to that in *Mizenko*. In particular, the defendants argue that the acceptance of benefits under the Virginia Act implicates Virginia's "substantial interest in applying the exclusivity provision to maintain the uniform application of the Virginia Act and to protect employers and employees." *See* Capitol's Brief in Support at 4. This Court is not persuaded that the application of the *Mizenko* approach would necessarily result in a finding in favor of the Virginia Act's exclusivity provision and the preclusion of the plaintiffs' cause of action.

Contrary to the defendants' suggestion that the court in *Mizenko* would have reached an opposite result had the plaintiff in that case voluntarily elected the remedy under the Virginia Act, the fact of the matter is that the Virginia Supreme Court never specifically addressed how it would rule had it been faced with such a set of facts. In fact, the *Mizenko* court specifically stated that "we are not confronted with a situation where a worker is attempting to repudiate one portion of the Virginia Act while he is accepting benefits under another portion of the Act." The majority opinion in *Mizenko* does not decide the issue which this Court must now address.

There is no indication in *Mizenko* that the voluntary acceptance of benefits under the Virginia Act would automatically tip the balance in favor of the state's interest. It is without question the voluntary acceptance of benefits does implicate the interests of Virginia. As a result of the voluntary acceptance of benefits, the state's interests are higher than the state's interests in *Mizenko*, which the court held to be minimal. *Mizenko*, 244 Va. at 163. However, this Court does not believe that the state's interests are sufficient to outweigh the substantial and compelling federal interests in the uniform application of general maritime law and in the protection of the plaintiffs' substantive rights. The recovery of a plaintiff in a negligence action based in general maritime law should not be dependant on the location in which the injury occurred. This Court reiterates that which was stated in *Mizenko*: "To take away [a plaintiff's] federal right of action, merely because his ship was located in navigable waters in a Virginia port, would undermine basic principles of federal uniformity with no measurable benefit resulting to the state." *Id.* at 163.

Furthermore, during oral argument on the plea in bar, the defendants relied upon the case of *Grant Smith-Porter Ship Co. v. Rohde*, 257 U.S. 469 (1922), in which the plaintiff was injured while working as a carpenter on a partially completed vessel lying in the navigable waters of the United States in Oregon. *Id.* at 473-74. The plaintiff brought suit against his employer for negligence despite having already received benefits under Oregon's workers' compensation act. *Id.* at 474-75. The Supreme Court in *Rohde* allowed the exclusivity provision of the Oregon workers' compensation statute to be given effect. In doing so, the Court emphasized the fact that the work being performed by the plaintiff was non-maritime, having no direct relation to navigation or commerce. *Id.* at 475-76. The Court also

relied on the fact that the plaintiff had agreed to be bound by the terms of the Oregon statute in his employment contract. *Id.* at 477. As a result, the Supreme Court gave effect to Oregon's workers' compensation act because it found that it did not work any material prejudice to general maritime law. *Id.*

*Rohde*, which was decided in 1922, predates the passage of the Longshore Act by five years. For the following reasons, the Court finds this case to be inapposite. First, "[t]he Supreme Court has uniformly held that ship repair is a maritime activity." *Mizenko*, 244 Va. at 156-57 (citing *Baizley Iron Works v. Span*, 281 U.S. 222, 232 (1930)). Plaintiffs' work aboard the U.S.S. *Leyte Gulf* was maritime in nature and has a direct relation to navigation and commerce. Second, there is no employment contract binding plaintiffs to the terms of the Virginia Act. Third, the application of the exclusivity provision of the Virginia Act would work material prejudice to general maritime law, as it would entirely preclude the plaintiffs' maritime tort claims. For these reasons, the *Rohde* case is not persuasive and has no effect on the Court's analysis.

This Court is, however, informed by the decisions of the various courts of the Fourth Circuit and persuaded namely by the rationale of the U.S. District Court for the Eastern District of Virginia in the parallel case of *Moore*. *Moore*, decided almost eighteen years after *Mizenko*, specifically rejected the *Mizenko* interest balancing approach and, instead, adopted the Supremacy Clause approach. The *Moore* court denied Capitol's motion for summary judgment after a full analysis and application of the Supremacy Clause approach, holding that the plaintiff's general maritime negligence claims were not precluded by the operation of the Virginia Act's exclusivity provision. *Moore*, 699 F. Supp. 2d at 783.

Accordingly, the Court finds, as in *Moore*, that the plaintiffs' claims are not grounded in common law negligence but rather in federal maritime law. There is no dispute as to the fact that the plaintiffs' injuries occurred on the navigable waters of the United States or that the ship repair activities had a significant relationship to traditional maritime activity. According to *Garvin*, "[t]he federal immunity rule is to be applied when the third party-claim is a federal claim." *Garvin*, 787 F.2d at 917. Where the plaintiff has, in fact, asserted a substantive right recognized by federal general maritime law, "the court may give effect to otherwise-applicable state law if, and only if, the state law in question does not operate to deprive the litigant of that right." *Moore*, 699 F. Supp. 2d at 783. Here, as in *Moore*, the operation of the Virginia Act's exclusivity provision would preclude the plaintiffs' maritime tort claims altogether, a result *Moore* deemed to be the "quintessence of deprivation." *Id.* Therefore, the exclusivity provision of the Virginia

Act shall not operate to deprive the plaintiffs of their substantive rights recognized by federal general maritime law. Hence, defendants Tecnico and Capitol remain subject to plaintiffs' general maritime negligence causes of action.

For these reasons, Defendants' Plea in Bar is denied.